### DENNIS E. WHITE *v.* PHILIP KAMPNER ET AL.
### (14789)

BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

466

Argued February 18—decision released May 31, 1994

*Stewart I. Edelstein,* with whom was *Monte E. Frank,* for the appellants (defendants).

*Joseph A. Mengacci,* for the appellee (plaintiff).

BERDON, J. This appeal raises two principal issues: (1) whether the agreements entered into by the parties empowered the arbitrator to determine the arbitrability of their contractual dispute; and (2) if not, whether, after seasonable objections to arbitrability, the voluntary submission of that issue to the arbitrator constituted a waiver. The trial court vacated an arbitration award in favor of the plaintiff, Dennis E. White, and against the defendants, Philip and Helen Kampner. The plaintiff appealed to the Appellate Court, and that court reversed, holding that, under the parties' contract, the determination of arbitrability was within the sole province of the arbitrator. *White* v. *Kampner*, 31 Conn. App. 73, 79, 623 A.2d 514 (1993). We granted the defendants' petition for certification, and we now reverse.[1]

The following facts are undisputed. In August, 1990, the plaintiff entered into a contract[2] with the defend-

[1] We certified the following issue for review: "Where parties to a contract make the authority of an arbitrator to act conditional on the completion of two mandatory negotiation sessions prior to arbitration, and it is undisputed that neither mandatory negotiation session ever took place, and it is undisputed that the defendants never waived their challenge to the arbitrator's authority to act, did the Appellate Court properly reverse the trial court's vacating an arbitrator's award?" *White* v. *Kampner,* 226 Conn. 909, 625 A.2d 1379 (1993). The principal issue, as we frame it herein, differs from the certified issue in that the certified issue assumes that it is undisputed that the defendants never waived their challenge to the arbitrator's authority to act. The Appellate Court had no occasion to reach the issue of waiver because its interpretation of the contractual language was dispositive of the appeal. *White* v. *Kampner,* supra, 31 Conn. App. 77. Nevertheless, although the factual determinations of the trial court with respect to waiver are undisputed, both parties briefed the legal aspect of the waiver issue. See footnote 11. When the dictates of justice so demand, we may expand or modify a certified issue. Practice Book § 4187; *Paranteau* v. *DeVita,* 208 Conn. 515, 516 and n.1, 544 A.2d 634 (1988). Accordingly, we restate the issue to include the plaintiff's claim of waiver by the defendants.

[2] Although the parties entered into two separate contracts, a management contract and a purchase contract, the provisions pertaining to arbitration in each contract are identical. Therefore, this opinion will refer to the contracts jointly as "the contract."

ants. Under the contract, the plaintiff agreed to manage State Paint, Inc., a Connecticut corporation owned by the defendants, and was granted an option to purchase the corporation. There were two contractual clauses pertaining to the arbitrability of a dispute: a "mandatory negotiation" clause and an "arbitration" clause.

The clause entitled "mandatory negotiation" provides: "[The parties] agree that they will attempt to negotiate in good faith any dispute of any nature arising under this [agreement]. The parties shall negotiate in good faith at not less than two negotiation sessions prior to seeking any resolution of any dispute under the [arbitration provision] of this [agreement]. Each party shall have the right to legal representation at any such negotiation session."

The clause entitled "arbitration" provides: "Any dispute or question arising under the provisions of this [agreement] which has not been resolved under [the mandatory negotiation provision] shall be determined by arbitration before one (1) arbitrator appointed by the American Arbitration Association. Arbitration proceedings shall occur at a neutral location in Waterbury, Connecticut, and shall be conducted in accordance with the rules then applicable of the American Arbitration Association. The decision of the arbitrator shall be final and may be entered in any court having jurisdiction thereof. Each party shall pay one-half of all costs and expenses of such arbitration."

In December, 1990, the parties found themselves in a contract dispute. The defendants, alleging that the plaintiff had been dishonest in his management of the business, terminated the plaintiff's employment. Initially, both parties desired to negotiate, but after some delay not the sole fault of either party, the plaintiff filed a written demand for arbitration with the American Arbitration Association (arbitration association).

Prior to the arbitration hearing, the defendants repeatedly wrote to the arbitration association and to the plaintiff, stating that arbitration should not proceed because no negotiation sessions had occurred.[3] Nevertheless, the arbitrator scheduled the arbitration hearing for October 30, 1991. At the commencement of the evidentiary hearing, the defendants again objected to the arbitrator's authority to hear the dispute, claiming that it was not arbitrable due to the failure to hold the negotiation sessions. The arbitrator denied the objection. The trial court found that the parties, during the hearing before the arbitrator, had submitted the issue of arbitrability to the arbitrator, but only "in the context of an objection to the entire proceeding . . . before the arbitration evidence began."[4]

After the evidentiary hearing, the arbitrator made a written award in favor of the plaintiff, finding the defendants in breach of contract, and awarded dam-

[3] For example, the attorney for the defendants wrote to Jeffrey T. Zaino, tribunal administrator of the arbitration association, the following: "We have been unable to schedule a mandatory negotiation session in accordance with the underlying contract to date. I have written to [the attorney for the plaintiff] to schedule same without response.

"Since this session forms the underlying jurisdictional basis for arbitration, please be advised that the hearing should be canceled until the complainant is in compliance with the agreement."

[4] The trial court found the following: "The proceedings before the arbitrator were unrecorded, and the witnesses in this court differed on whether the question of arbitrability had been submitted to the arbitrator. The court finds that it was. [The plaintiff's arbitration attorney] credibly testified that he and [the defendants' arbitration attorney] agreed at the conclusion of the arbitration hearing to submit their correspondence to the arbitrator so that the arbitrator could decide the issue of arbitrability. [The plaintiff's arbitration attorney] also testified, however, that this was done in the context of an objection to the entire proceeding by [the defendants' arbitration attorney] before the arbitration evidence began. [The defendants'] objection was based on the specific ground that no negotiation sessions had occurred. The court finds that this objection was seasonably made to the arbitrator and that no waiver occurred."

ages to the plaintiff.[5] The plaintiff filed an application to confirm the arbitration award with the Superior Court pursuant to General Statutes § 52-417,[6] and the defendants filed an application to vacate the award pursuant to General Statutes § 52-418.[7] The trial court determined that the issue before it was "whether the matter could legally proceed to arbitration in the first place. This question arises from the fact that, while the contract calls for two negotiation sessions as a precondition to any request for arbitration, not even one negotiation session has ever occurred in this case." The trial court found that the defendants had preserved the issue of arbitrability by timely objection to the arbitrator before the commencement of arbitration proceedings. Because no negotiation sessions had occurred and

[5] The arbitrator made the following award to the plaintiff: "[The defendants] breached the Management Contract with Claimant. Award in favor of Claimant of: 1. $49,883.44 with 10 [percent] per annum accruing from August 27, 1990 until date of payment; and 2. $205,200.00 with 10 [percent] per annum accruing from January 28, 1991 until date of payment." The arbitrator also extended the time limit within which the plaintiff could exercise his option to purchase the corporation.

[6] General Statutes § 52-417 provides in pertinent part: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[7] General Statutes § 52-418 provides in pertinent part: "(a) Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

because the defendants had preserved their right to have the court determine arbitrability, the trial court vacated the arbitration award.

On appeal, the Appellate Court determined that the parties' contract had provided for an unconditional submission to arbitration of any dispute arising under the contract, including threshold issues of arbitrability. *White* v. *Kampner,* supra, 31 Conn. App. 77. On the basis of this determination, the Appellate Court held that the arbitrator's decision that the dispute was arbitrable[8] was unreviewable for errors of law or fact by the trial court. Id., 78. Accordingly, the Appellate Court did not reach the issue of waiver. The Appellate Court reversed the judgment of the trial court and ordered that court to grant the plaintiff's application to confirm the arbitration award and deny the defendants' application to vacate the award. Id., 79.

I

Unless statutorily mandated; see, e.g., *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 187, 530 A.2d 171 (1987); arbitration is a creature of contract. *John A. Errichetti Associates* v. *Boutin,* 183 Conn. 481, 488, 439 A.2d 416 (1981). "Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." *Garrity* v. *McCaskey,* 223 Conn. 1, 4–5, 612 A.2d 742 (1992). Nevertheless, "a person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner in which, he has agreed so to do." *Mar-*

---

[8] The Appellate Court noted: "Although the arbitrator's award did not specifically address the issue of arbitrability, the arbitrator concluded that '[t]his award is in full and final settlement of any and all claims submitted to this arbitration.' " *White* v. *Kampner,* supra, 31 Conn. App. 75. Neither party challenges the Appellate Court's determination that the arbitrator implicitly found the dispute to be arbitrable.

*sala* v. *Valve Corp. of America,* 157 Conn. 362, 365, 254 A.2d 469 (1969). This limitation on contractual arbitration includes the requirement of satisfying any conditions precedent to arbitration. *Frager* v. *Pennsylvania General Ins. Co.,* 161 Conn. 472, 477, 289 A.2d 896 (1971).

The first issue presented by this appeal is whether, by contract language, the parties manifested an intent to have the question of arbitrability determined by the arbitrator. " 'Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also.' . . . 'The intention to have arbitrability determined by an arbitrator can be manifested by an express provision or through the use of broad terms to describe the scope of arbitration, such as "all questions in dispute and all claims arising out of" the contract or "any dispute that cannot be adjudicated." ' " (Citation omitted.) *Welch Group, Inc.* v. *Creative Drywall, Inc.,* 215 Conn. 464, 467, 576 A.2d 153 (1990).

The plaintiff argues, and the Appellate Court held, that the intent to have arbitrability determined by the arbitrator was manifested by the broad language of the parties' contract. *White* v. *Kampner,* supra, 31 Conn. App. 77. The defendants argue that the trial court correctly determined that the plain language of the arbitration and negotiation clauses created a conditional submission to arbitration, rather than an unrestricted submission as determined by the Appellate Court. Under these circumstances, the defendants argue, it was for the court, not the arbitrator, ultimately to determine the issue of arbitrability. We agree with the defendants.

We initially note that, because we favor arbitration, we will defer to this alternative method of dispute resolution if the contractual arbitration provisions fall

within the grey area of arbitrability, employing the "positive assurance" test as set out in *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960). Under this test, " 'judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " (Emphasis in original.) *Board of Education* v. *Frey,* 174 Conn. 578, 582, 392 A.2d 466 (1978), quoting *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* supra, 582–83. Nevertheless, the contractual language in this case does not fall within the grey area and, therefore, the positive assurance test is not applicable.

The trial court correctly interpreted the contractual language to require satisfaction of the provisions of the mandatory negotiation clause as a condition precedent to arbitration, and correctly determined that this arbitrability issue was one for the courts to determine, not the arbitrator. Although the arbitration clause begins with broad language that generally grants jurisdiction to the arbitrator to determine the issue of arbitrability; *Welch Group, Inc.* v. *Creative Drywall, Inc.,* supra, 215 Conn. 467; express language in the contract restricts the breadth of that clause. The arbitration provision that makes arbitrable "[a]ny dispute or question arising under the provisions of this [agreement]" is qualified by the clause *"which has not been resolved under"* the mandatory negotiation provision. (Emphasis added.) Furthermore, we construe a contract as a whole and all relevant provisions are considered when determining the intent of the parties. *Bialowans* v. *Minor,* 209 Conn. 212, 217, 550 A.2d 637

(1988). In this regard, the plain language of the mandatory negotiation provision provides that the parties are to negotiate in good faith "at not less than two negotiation sessions *prior* to seeking any resolution of any dispute under" the arbitration provision. (Emphasis added.)

In *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 275–77, 231 A.2d 531 (1967), an insurance contract contained an agreement to arbitrate subject to the determination of the existence of the condition precedent that the insured's automobile involved in the accident had contact with the automobile of an uninsured motorist.[9] The plaintiff claimed that the arbitrator had been authorized under the contract to determine the threshold issue of arbitrability—that is, whether there was the required contact between the automobiles. Id., 277. This court disagreed. "Since the question of contact was a condition precedent to arbitrability, it should not, itself, have been adjudged to be arbitrable." Id. Likewise, in the present case, there is a contractual requirement of mandatory negotiation sessions that is a precondition to the arbitrability of any dispute, and the arbitration was limited to those issues that were "not resolved" under the mandatory negotiations.[10]

---

[9] Arbitration was further limited to the insured's right to recover damages and the amount of damages. *Frager* v. *Pennsylvania General Ins. Co.,* supra, 155 Conn. 275.

[10] We agree with the Appellate Court that "a trial court may not substitute its own findings regarding whether a party met a procedural precondition to arbitration for those of the arbitrator *when the arbitrator is contractually empowered to decide the question of arbitrability.*" (Emphasis added.) *White* v. *Kämpner,* supra, 31 Conn. App. 78, citing *East Hartford* v. *East Hartford Municipal Employees Union, Inc.,* 206 Conn. 643, 656–57, 539 A.2d 125 (1988). Nevertheless, the issue presented by this case is whether the arbitrator was indeed contractually empowered to decide the question of arbitrability. In that regard, this case is distinguishable from *East Hartford* v. *East Hartford Municipal Employees Union, Inc.,* supra. In *East Hartford,* a collective bargaining agreement contained broad lan-

We conclude that the mandatory negotiation sessions constituted a condition precedent to arbitration, and the determination of whether these sessions were held was not part of the contractual submission. Accordingly, under the contractual language, the issue of arbitrability in this case was one for the trial court.

## II

Our analysis does not end with our interpretation of the contractual language, because the parties did proceed to arbitration, and the trial court found that the parties had submitted the issue of arbitrability to the arbitrator. The plaintiff argues that, under these circumstances, the defendants waived their right to have the issue of arbitrability determined by the court.[11] We disagree.

guage providing for the unrestricted submission of all disputes, and there were "no restrictions in the collective bargaining agreement on what issues may be decided by the arbitrators." Id., 656. Under those circumstances, we rejected a claim that the trial court retained jurisdiction over disputes regarding the satisfaction of procedural prerequisites to arbitrability. Id., 656–57. We held that the language of the contract answers the question of whether the trial court or the arbitrator determines issues of arbitrability, not the formal identity of the issue as procedural or substantive. Id.; see *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 123, 318 A.2d 84 (1972) (where contract provided in broad, unconditioned terms that " '[a]ny disagreement arising out of this contract or from the breach thereof shall be submitted to arbitration,' " the arbitrator, not the court, has the authority to determine whether dispute was arbitrable based on claim that party pursued complaint in untimely fashion). In the present case, unlike in *East Hartford* and *Gary Excavating, Inc.,* the contract language specifically expresses an intent to make arbitrable *only* the category of disputes not resolved through the mandatory negotiation sessions.

[11] In the context of this case, there are two ways by which the defendants could potentially have waived their right to have arbitrability determined by the trial court. First, the defendants could have waived the requirement of mandatory negotiation sessions either expressly or through conduct repudiating their duty to negotiate. The trial court found, however, that the defendants were not responsible for the failure to hold the negotiation sessions, and therefore did not waive the threshold issue of

We have held that there are two procedural routes by which a party may preserve the issue of the arbitrability of a particular dispute for judicial determination. First, a party may refuse to submit to arbitration at the outset and instead compel a judicial determination of the issue of arbitrability. *Schwarzschild* v. *Martin,* 191 Conn. 316, 323, 464 A.2d 774 (1983); *New Britain* v. *State Board of Mediation & Arbitration,* 178 Conn. 557, 560–61, 424 A.2d 263 (1979). "Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute. . . . In such cases a court, on a motion to vacate, may properly entertain a challenge to an award alleging disregard of the limits in the parties' agreement with respect to arbitration." (Citations omitted.) *New Britain* v. *State Board of Mediation & Arbitration,* supra, 560; see *Bridgeport* v. *Bridgeport Police Local 1159,* 183 Conn. 102, 105, 483 A.2d 1171 (1981); *Conte* v. *Norwalk,* 173 Conn. 77, 80, 376 A.2d 412 (1977). "Thus, the mere conformity of the submission to the award does not foreclose the court from reviewing whether that award is in violation of the parties' agreement." (Internal quotation marks omitted.) *Schwarzschild* v. *Martin,* supra, 323.

This "is not to say that the parties may not waive procedural limits. . . . [P]arties [may not] forego objections to arbitration, gambling upon a favorable result and, when losing . . . raise the procedural

arbitrability by their conduct. The plaintiff does not challenge this finding on appeal, and therefore this issue is not before us.

The second way that the defendants could have waived their right to have arbitrability determined by the trial court is if the defendants had agreed to submit the issue of arbitrability for final determination by the arbitrator without a right to subsequent judicial determination. This is the waiver issue that is before this court.

defects in a motion to vacate."[12] *Board of Education* v. *Waterbury Teachers Assn.,* 168 Conn. 54, 63, 357 A.2d 466 (1975). We have held that a party who voluntarily submits a dispute to arbitration without objecting to the arbitrability of the dispute waives judicial review of that issue. *New Britain* v. *State Board of Mediation & Arbitration,* supra, 178 Conn. 561. In *New*

[12] The defendants initially argued that the issue of arbitrability is one of subject matter jurisdiction that cannot be waived even if the losing party voluntarily proceeds to arbitration without objection and then brings a motion to vacate to the trial court. The defendants rely on *Bennett* v. *Meader,* 208 Conn. 352, 364, 545 A.2d 553 (1988). We disagree with the defendants on this point.

In *Bennett,* the parties entered into an oral agreement to arbitrate their dispute. Id., 354. The plaintiffs did not object before the arbitrator as to the arbitrability of their dispute. Id., 364. The trial court vacated the arbitration award on the plaintiffs' motion, holding that the oral arbitration agreement was unenforceable. Id., 354–55. This court affirmed, noting that by express statutory command; General Statutes § 52-408; arbitration agreements must be in writing to be enforceable. Id., 362. We rejected the defendant's argument that the plaintiffs had waived their right to challenge the validity of the arbitration agreement by participating in arbitration proceedings without objection, because "[t]he authority of the arbitrator is a subject matter jurisdiction issue, and as such it may be challenged at any time prior to a final court judgment." Id., 364. Despite the expansive language of this last statement, however, it is clear that *Bennett* does not stand for the broad proposition, argued by the defendants, that all issues of arbitrability involve subject matter jurisdiction. To the contrary, the specific holding of *Bennett* is "that an agreement to arbitrate *must meet the requirements of the arbitration statute,* including the requirement that the agreement be in writing, or it is invalid." (Emphasis added.) Id. There is no claim in the present appeal that the parties' agreement to arbitrate did not meet the requirements of § 52-408.

If the defendants' expansive reading of *Bennett* were correct, the fact that the defendants objected before the arbitrator in the present case would be wholly irrelevant, as they could have proceeded to arbitration without objection, and without raising the arbitrability issue, challenging arbitrability only upon an unfavorable result in the arbitration hearing. This result would be inconsistent with the well established principle that a party can waive judicial review of arbitrability absent clear objection before the arbitrator; *New Britain* v. *State Board of Mediation & Arbitration,* supra, 178 Conn. 560–61; because subject matter jurisdiction cannot be waived. Therefore, we conclude that the issue of arbitrability in this case does not implicate subject matter jurisdiction.

*Britain,* the record revealed that "the city joined with the union in submitting the dispute . . . to arbitration and that the joint submission of the parties neither presented nor reserved any question as to the arbitrability of that dispute. Not until *after* the underlying dispute had been finally resolved on the merits did the plaintiff raise any question as to the arbitrability of the underlying dispute." (Emphasis in original.) Id. Accordingly, we held that "the city's claims as to the arbitrability of the underlying dispute must be deemed to have been waived," and therefore the arbitrability claim was not cognizable on a motion to vacate. Id.

The facts of this case are distinguishable from those of *New Britain.* In this case, as we previously noted, the trial court found that the defendants repeatedly objected to the arbitrability of the dispute before the commencement of arbitration proceedings, and the plaintiff does not challenge this finding on appeal. Neither is the plaintiff's claim of waiver enhanced because, as he argues, "the parties had in fact agreed to submit to the arbitrator the issue of their good faith attempts, or lack thereof to hold the negotiation sessions" in order to decide the issue of arbitrability. This argument ignores the trial court's explicit finding that the issue was submitted in the context of the defendant's objection to the arbitration proceedings. See footnote 4. Because the defendants preserved their objection to the arbitration, they had the option of committing the issue to the arbitrator without risking any waiver of their right to have the issue ultimately determined by the trial court. *New Britain* v. *State Board of Mediation & Arbitration,* supra, 178 Conn. 560. Under these circumstances, we hold that the defendants did not waive consideration of the issue of arbitrability by the trial court.

The remaining question—that is, whether the parties were required to participate in the mandatory negotiation sessions prior to arbitration—is subsumed in our analysis of the first question. In that analysis, we concluded that the sessions were required, and that the trial court was correct in vacating the arbitration award.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.