[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: ARBITRABILITY
Plaintiff brings this action to restrain defendant from proceeding with arbitration of certain claims and for a declaratory judgment.
Facts
On or about March 11, 1992 the parties entered into a construction contract for work to be done on an elementary school in the Town of Southington. (Contract)
On or about April 16, 1993 the plaintiff terminated the defendant as the contractor under the Contract.
Between May 17 and May 21, 1993 defendant filed an application for arbitration with the American Arbitration Association (AAA).
That claim in that application reads as follows:
"NATURE OF DISPUTE
Breach of contract by Respondent in connection with construction additions and alterations to Central Elementary School in Southington, Connecticut, including, without limitation, issuance of incorrect and inaccurate plans and specifications, disruption, delay and interference with Claimant's work, failure to timely and properly pay Claimant CT Page 1369 for work completed and installed, failure to timely and properly process change orders and approvals, failure to timely and properly respond to Claimant's requests for information, failure to pay for additional items of work not shown in the plans and specifications, accelerating portions of Claimant's work, exposing Claimant to contingent liability with respect to claims by subcontractors, wrongfully terminating Claimant's contract when the project was substantially or nearly complete, and other breaches."
On or about June 15, 1993 the plaintiff filed an answer and counterclaim to defendant's application together with the presumably appropriate fee. That counterclaim reads a follows:
 "Counterclaim of Town of Southington and Central Elementary Building Committee
Respondent counterclaims for an unspecified amount of damages in excess of two hundred thousand dollars in connection with the Contract which is the subject of this Arbitration. This claim is based on breach of contract, unreasonable delay triggering the penalty clause in contract, failure to provide sufficient labor to the Project, damage to the premises caused by negligence, failure to pay subcontractors, and failure to provide sufficient labor to the Project, damage to the premises caused by negligence, failure to pay subcontractors, and failure to perform contractual obligations in a professional and workmanlike manner. Damages of Respondent include arranging for repairs, substitute performance of uncompleted obligations, purchasing supplies and materials in an emergency situation, and the incurring of architectural and legal expenses in attempting to respond in a commercially reasonable manner to Complainant's default. Robert Izzo Attorney for Respondents."
Thereafter, through AAA, the parties tried and failed to mediate their differences. Then on or about January 14, 1994 AAA notified the parties that an arbitrator had been selected.
On or about April 14, 1994 AAA told the parties that two arbitration hearings would be held on May 25 and 26, 1994. On May 17, 1994 plaintiff filed this action.
The Contract has an arbitration clause which, in CT Page 1370 pertinent part is as follows:
"ARBITRATION CLAUSE
4.5.1 Controversies and Claims Subject to Arbitration. Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5. Such controversies or Claims upon which the Architect has given notice and rendered a decision as provided in Subparagraph 4.4.4 shall be subject to arbitration upon written demand of either party. Arbitration may be commenced when 45 days have passed after a Claim has been referred to the Architect as provided in Paragraph 4.3 and no decision has been rendered."
The plaintiff claims that the issue of arbitrability is not arbitrable. Defendant says it is but even if it is not plaintiff has waived any objection it may have to arbitration by its acts and omissions.
Law
The real issue here comes in two parts. First, is the question of whether the plaintiff's actions, up to May 17, 1994, constitute waiver of its right to have the question of arbitrability decided by the court. Second, is the question as to whether that waiver, if found, continues after May 17, 1994.
I. Waiver to May 17, 1994
Waiver is the intentional relinquishment of a known right. Goldenberg v. Corporate Air, Inc., 189 Conn. 504, 510.
When in the arbitration we compare the plaintiff's counterclaim to the defendant's claim as set forth as "Nature of Dispute" in its demand for arbitration we see a clear list of claimed items of breach of the construction contract for the school on one side and a shorter list of items CT Page 1371 constituting breach of the same contract, including negligent property damage on the other.
From all this it is clear that plaintiff wanted to arbitrate this entire contract dispute up through June 15, 1993. Plaintiff did nothing to change its position in that regard up to May 17, 1994.
Waiver may be inferred from acts and conduct. Id. 510. Here plaintiff's acts and conduct as set forth show an intentional waiver.
Waiver as of May 17, 1994 and Thereafter
 White v. Kempner, 229 Conn. 465 makes it clear that a party may not be forced to arbitrate an issue or a claim unless he has agreed. Id. 471. It also makes clear that if a party "voluntarily submits a dispute to arbitration without objecting to the arbitrability "`[he] waives' judicial review of that issue." Id. 477. What it does not reach is whether or not a waiver once made may be revoked even after a long period of time.[1]
Plaintiff here waived any possible objection to arbitration by June 15, 1993. Such waiver is permitted. NewBritain v. Connecticut State Board of Mediation andArbitration, 178 Conn. 557, 560-561. It did nothing after June 15, 1993 to attempt to revoke that waiver for eleven months.[2] The laws of our state favor and encourage arbitration. Garrity v. McCaskey, 223 Conn. 1, 4-5. Among the reasons for such favor are the avoidance of "the formalities, the delay, the expense and the vexation of ordinary litigation." Kantrowitz v. Perlman, 156 Conn. 224,226. The plaintiff's waiver and its long unrestricted continuance in the arbitration process is in accord with that judicial policy. Its present attempt to revoke that waiver not only flies in the face of our policy of avoiding delay, expense and the vexations of ordinary litigation but adds to those problems by increasing the delay, expense and vexations.
"The continued autonomy of [the arbitration] process can be maintained only with a minimum of judicial intrusion. It is the responsibility of those employing arbitration to ensure that every right [sic] and limitation on the arbitration process for which they have contracted is preserved." CT Page 1372Waterbury Board of Education v. Waterbury Teachers Assn.,168 Conn. 58, 64.
Plaintiff's waived any right it had in regard to who was to decide the issue of arbitrability.
Application for injunction relief is denied.
Request for declaratory judgment is denied in accordance with this opinion.
O'Neill, J.