[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION Motion For Stay
The defendants' move for stay of proceedings on the ground that any issue involved in the present action should CT Page 279 be referred to arbitration.
On April 25, 1995, the plaintiff, Matthew Saltzman, filed an eight count complaint against the defendants, The Travelers, Inc. (Travelers) and Smith Barney Shearson, Inc. (Smith Barney). The facts in the complaint are as follows. In June 1989, the plaintiff was hired by the defendant Smith Barney (formerly known as Smith Barney, Harris Upham Co., Inc.) as a securities representative and an agent. At that time the plaintiff signed a Uniform Application for Securities Industry Registration form (U-4) that contained an arbitration clause. The plaintiff designated Smith Barney as his "firm" on the form U-4. An examination of item 10 on the form U-4 reveals an "X" signifying the NASD (National Association of Securities Dealers, Inc.) and the NYSE (New York Stock Exchange, Inc.), among others, as the organizations with which the plaintiff was registered.
On or about February 10, 1995, the plaintiff voluntarily left the employment of Smith Barney, which is a wholly owned subsidiary of the Travelers. Prior to his departure, the plaintiff had participated in the Travelers' Capital Acquisition Plan (the Plan) in which certain employees could have a portion of their gross earnings invested in discounted, transfer-restricted stock of the Travelers. According to the Plan, the shares' transfer restriction would be removed if the employee remained in the employ of Smith Barney for two years from the date of the shares' issuance. If the employee voluntarily terminated his employment before the end of the two year restriction period, the stock would automatically revert to the Plan.
When the plaintiff voluntarily left Smith Barney's employment, the plaintiff owned 2,327 restricted shares from his participation in the Plan in 1993 and 1994. These shares were obtained by Smith Barney having deducted $37,002.82 and $30,799.50 from the plaintiff's earnings in 1993 and 1994 respectively. Upon leaving Smith Barney's employment, the plaintiff was informed that his restricted stock would revert back to the Travelers' Plan.
In his eight count complaint dated April 25, 1995, the plaintiff alleges (1) a civil action for failure to reimburse deductions from wages pursuant to General CT Page 280 Statutes § 31-72; (2) breach of fiduciary duty; (3) breach of the covenant of good faith and fair dealing; (4) unjust enrichment (deductions); (5) a civil action for unpaid commissions pursuant to General Statutes § 31-72; (6) unjust enrichment (commissions); (7) a civil action for violation of SEC Rule 10b; and (8) a violation of the Connecticut Unfair Trade Practices Act as set forth in General Statutes § 42-110a et seq.
This matter comes before the court on the defendants' motion for stay of proceedings which was filed on June 7, 1995 with a supporting memorandum. On August 4, 1995, the plaintiff filed an objection to the motion for stay of proceedings and a memorandum in support thereof. On September 20, 1995, the defendants filed a reply memorandum.
The defendants' motion was brought pursuant to General Statutes § 52-409 which provides for the entry of a stay in a pending case. "If any action for legal or equitable relief or other proceeding is brought by any party to a written agreement to arbitrate, the court in which the action or proceeding is pending, upon being satisfied that any issue involved in the action or proceeding is referable to arbitration under the agreement, shall, on the motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making application for the stay shall be ready and willing to proceed with the arbitration." General Statutes § 52-409. A court order granting a stay pursuant to General Statutes § 52-409 does not terminate the action, but merely postpones its disposition. KND Corporation v. Hartcom, Inc.,5 Conn. App. 333, 336, 497 A.2d 1038 (1985).
In support of their motion for stay, the defendants offer two arguments. They first argue that the plaintiff's arbitration obligation is valid and must be enforced under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (hereinafter F.A.A.). The defendants cite Moses H. ConeMemorial Hospital v. Mercury Construction Corp.,460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) for the proposition that, because federal law governs the issue of arbitrability in state and federal courts, both the existence of an agreement to arbitrate and its scope are CT Page 281 questions to be decided under federal law. The defendants further argue that the "Form U-4 arbitration obligation plainly is within the coverage of the [F.A.A.], as it is in writing and evidences transactions involving commerce." (Memorandum in Support of Defendants' Motion for Stay, p. 5.)
Additionally, the defendants argue that the plaintiff's claims are within the scope of the agreement to arbitrate. Describing the arbitration provision in question as "broadly worded and encompass[ing] all controversies relating to the plaintiff's employment and termination thereof", the defendants argue that it cannot be said with "positive assurance" and without any doubt that the arbitration provision would not cover the dispute. (Memorandum in Support of Defendants' Motion for Stay, p. 5.) The defendants cite two cases from the Second Circuit to support the proposition that "the Form U-4 arbitration provision has been held to require arbitration of claims by employees against former employees." See McGinnis v. E.F.Hutton Co., Inc., 812 F.2d 1011, 1013 (6th Cir. 1987);Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 704 (2d Cir. 1985), cert. denied, 475 U.S. 1067 (1986).
In response to the defendants' motion, the plaintiff counters that "the form U-4 registration does not constitute a contract between the parties in the action." (Plaintiff's Memorandum in Support of Objection to Motion for Stay, p. 6.) The plaintiff further argues that "[a]ssuming arguendo that the Form U-4 is a contract, it is unenforceable because it is a contract of adhesion" due to lack of mutual assent and unconscionability. The plaintiff claims that "[t]he Defendants' position that the uniform application provides for arbitration of all disputes, of every nature, effectively forecloses the Plaintiff from availing himself of the opportunity to litigate any matter in court, and is therefore unconscionable." (Plaintiff's Objection to Motion for Stay of Proceedings, pp. 1-2.)
In their reply brief, the defendants reiterate their arguments that (1) they are entitled to enforce the form U-4 arbitration obligation because the arbitration agreement is enforceable by Smith Barney and the Travelers, and the plaintiff's claims against Travelers are covered by the arbitration agreement; (2) the form U-4 arbitration CT Page 282 agreement is not a contract of adhesion; (3) the arbitration agreement is not unconscionable and (4) no evidentiary hearing is necessary.
The arbitration provisions of the form U-4 are governed by the terms of the F.A.A. The form U-4 between the plaintiff and Smith Barney designates the NYSE and the NASD as the exchanges with which the plaintiff was registered. The form obviously involves interstate commerce so that the agreement falls within the F.A.A.'s scope. Section 2[1] of the F.A.A. embodies a substantive rule applicable in state as well as federal courts, whereby Congress acting under the Commerce Clause[2] foreclosed state legislatures from undercutting the enforceability of arbitration agreements. Southland Corporation v. Keating,465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). It is "well-settled that state courts have jurisdiction to hear cases arising under the [F.A.A.]." (Citations omitted.)Harbuck v. Marsh Block Co., 896 F.2d 1327, 1329 (11th Cir. 1990); see Stratford v. Bridgeport, 173 Conn. 303,310-11, 377 A.2d 327 (1977) (Connecticut state courts may enforce rights created by federal law). In any event as to the issues before the court, the Connecticut Arbitration Act, General Statutes §§ 52-408 et seq., is not inconsistent with the federal act. See White v. Kampner, 229 Conn. 465,641 A.2d 1381 (1994). This is especially true in light of the Connecticut courts' explicit adoption of the so-called "positive assurance" test set out in United Steelworkers ofAmerica v. Warrior Gulf Navigation Co., 363 U.S. 574,582, 80 S. (Ct. 1347, 4 L.Ed.2d 1409 (1960). See White v.Kampner, supra, 229 Conn. 472-474.
The court finds no support for the plaintiff's argument that the form U-4 is unenforceable as a contract of adhesion. According to the F.A.A., arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract."9 U.S.C. § 2. Form U-4 arbitration agreements have been upheld as valid and enforceable in numerous cases. SeeGilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20,111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); Fleck v. E.F. HuttonGroup, Inc., 891 F.2d 1047 (2d. Cir. 1989); McGinnis v.E.F. Hutton and Company, Inc., supra, 812 F.2d 1011; andSmith v. Merrill Lynch, Pierce, Fenner SmithIncorporated, 575 F. Sup. 904, 904-05 (N.D.Tx. 1983) (form CT Page 283 U-4 as required by the NYSE constitutes an agreement to submit to arbitration within the meaning of the F.A.A.). Form U-4 agreements have also been upheld against claims that they constitute contracts of adhesion. See Brown v.Merrill Lynch, Pierce, Fenner Smith, Inc., 664 F. Sup. 969
(E.D.Pa. 1987).[3] An "arbitration agreement is not invalid . . . merely because it is required of all registered brokers by the New York Stock Exchange Rule 347."Barrowclough v. Kidder Peabody Co., Inc., 752 F.2d 923,937 (3d Cir. 1985). In Gilmer v. Interstate/Johnson LaneCorp., supra, 500 U.S. 20, the United States Supreme Court upheld a form U-4 obligation against the contention that it was invalid due to unequal bargaining power between the broker-dealer employer and the employee. Justice White stated that "[t]here is no indication . . . that [the plaintiff], an experienced businessman, was coerced or defrauded into agreeing to the registration clause in his registration application." Id., 33. In light of the strong federal and state policies favoring arbitration. This court finds that the form U-4 herein was not a contract of adhesion and is valid and enforceable.
Although both state and federal law strongly law strongly favor arbitration "a person can be compelled to arbitrate a dispute only if, to the extent that, and the manner in which he has agreed to do so," Marsala v. Valve Corporation of America,157 Conn. 362, 365, 254 A.2d 469 (1969). The F.A.A. only gives a party a right to obtain an order directing that arbitration proceed in the manner provided for in (the parties') agreement.9 U.S.C. § 4. As the court articulated in Volt InformationSciences, Inc. v. Board of Trustees of the Leland Stanford JuniorUniversity, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488
(1989): "the F.A.A. does not require parties to arbitrate when they have not agreed to do so . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement . . . It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms . . . The [F.A.A.] was designed to make arbitration agreements as enforceable as other contracts, but not more so." The teaching ofVolt Information Sciences and White v. Kampner is that in deciding a motion like the one before the court, the contract for arbitration must be examined using ordinary contract principles of contract interpretation but with an important proviso based on policy favoring arbitration. CT Page 284
First, as a threshold matter, this court may not adjudicate the "arbitrability" issue if the terms of the form U-4 agreement executed by the plaintiff designates this responsibility to the arbitrator itself. Normally, the decision as to whether or not a particular dispute is arbitrable falls on the court. However, "[i]f the parties to a contract expressly agree to refer questions of arbitrability to the arbitrators, then the Court must enforce their agreement by refusing to answer the questions. If, however, their contract does not so provide, then the Court must decide such questions, for `[a] party cannot be forced to arbitrate the arbitrability issue.'" Litton Financial Printing Division v. NLRB,501 U.S. 190, 208, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). The so-called "positive assurance" test mandates that doubts in the interpretation of contractual language should be resolved in favor of "coverage", that is arbitration,United Steel Workers of America v. Warrior GulfNavigation Co., supra, 363 U.S. 582; Board of Education v.Frey, 174 Conn. 578, 582, 392 A.2d 466 (1978).
A useful tool to resolve coverage questions that has been developed by the courts is examining a contract to arbitrate to see whether it contains a so-called "broad arbitration clause" verses a "narrow arbitration clause." The Second Circuit has said: "Where the arbitration clause is broad we have directed courts to compel arbitration whenever a party has asserted a claim, however frivolous, that on its face is governed by the contract." PeerlessImporters, Inc. v. Local One, 903 F.2d 924, 927 (2d Cir. 1990). Broad clauses typically use language such as "arising out of" or "related to". A narrow arbitration clause limits the scope of disputes subject to arbitration and practically speaking gives a trial court more freedom when it decides motion to stay to rule that a particular dispute was not covered by the agreement. Id. SeeHartford Steam Boiler Inspection and Insur. Co. v.Industrial Risk Insurers, judicial district of Hartford-New Britain at Hartford, Docket No. 705105, 12 Conn. L. Rptr. 464 (Sep. 21, 1994) (Corradino, J.).
At the center of the arbitrability issue is a clause contained in the form U-4 executed by the plaintiff: "I agree to arbitrate any dispute, claim or controversy that CT Page 285 may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in item 10 as may be amended from time to time." In item 10, as aforementioned, the plaintiff indicated the NYSE and the NASD.
NYSE's Rule 347 requires the arbitration of: "[a]ny controversy between a registered representative and any member or member organization arising out of the employmentor termination of employment of such registered representative by and with such member or member organization . . . at the instance of any such party." (Emphasis added.)[4] This provision must be examined in conjunction with NYSE's arbitration rule. Rule 600(a) (¶ 2600) provides that "[a]ny dispute, claim or controversy
between a customer or non-member and a member, allied member, member organization and/or associated personarising in connection with the business of such member, allied member, member organization and/or associated person in connection with his activities as an associated person shall be arbitrated . . . as provided by any duly executed and enforceable written agreement . . . ." (Emphasis added.)
The NASD's Code of Arbitration Procedure (Part I, ¶ 3701, Sec. 1) ("Matters Eligible for Submission") "is prescribed . . . for the arbitration of any dispute, claim.or controversy arising out of or in connection with the business of any member of the [NASD] . . ., or arising out ofthe employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company: (1) between or among members; (2) between or among members and associated persons; (3) between or among members or associated persons and public customers, or others; and (4) between or among members . . . ." (Emphasis added.) The Code of Arbitration Procedure (Part II, ¶ 3708, Sec. 8, (a)) ("Required Submissions") states that: "[a]ny dispute, claim, or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others,arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or terminationof employment of such associated person(s) with such CT Page 286 member, shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and, (3) a person associated with a member against a person associated with a member." (Emphasis added.)
Excluding from arbitration only one type of dispute, disputes involving the insurance business of any member which is also an insurance company, NASD's Code of Arbitration applies to "any dispute, claim, or controversy arising out of or in connection with the business of any member of the [NASD] . . ., or arising out of the employment or termination of employment." Lacking any qualifying or exclusionary language imposing conditions precedent, the NYSE's arbitration clause applies to "any controversy . . . arising out of the employment or termination of employment" and "[a]ny dispute, claim or controversy between a customer or non-member and a member." Under the broad terms of the U-4 document entered into by the parties, that decisions as to the arbitrability of employment disputes under the NASD Code are solely the responsibility of the arbitrator. This court is satisfied that the plaintiff's complaint asserts claims which "aris[e] out of or in connection with the business of any member of the [NASD] . . ., or aris[e] out of the employment or termination of employment . . . ." This court finds that the defendants are ready and willing to arbitrate. See Memorandum in Support of Defendants' Motion for Stay, p. 9. This court, therefore, concludes that the complaint is subject to the written agreement to arbitrate.
Accordingly, the defendants' motion for stay of proceedings pending arbitration is granted.
M. Hennessey, J.