[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS (#107) AND MOTION FOR SUMMARY JUDGMENT (#111)
The plaintiff, Paucatuck Eastern Pequot Tribe (Tribe) is one of the state's five indigenous Indian tribes recognized under General Statutes § 47-59. The Tribe, although recognized by the State of Connecticut, has not received federal recognition as an Indian tribe. The Tribe's application for federal recognition is pending before the Bureau of Indian Affairs pursuant to 25 C.F.R. § 83.1 et. seq.[1]
The defendant Spirit Gaming Corporation (Spirit) is the assignee of a financial services agreement (FSA) entered into by the Tribe in 1995 with the Alden Group (Alden). Pursuant to the FSA, Alden was to provide funds to finance the Tribe's federal recognition process and further assist in land acquisition and development of a tribal gaming enterprise pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et. seq.
The American Arbitration Association (AAA), also named as a defendant, CT Page 11953 is a public service, non-profit organization providing a forum for dispute resolution.
In this case, the Tribe complains that Alden breached its obligation to provide the necessary funds to finance the federal recognition process. The Tribe, with assistance from other resources, is pursuing the recognition process on its own. Spirit seeks to enforce its rights under the FSA, and has submitted its dispute with the Tribe to the AAA pursuant to a specific provision of the FSA.
Spirit initiated the arbitration process in November of 1998. The Tribe and Spirit agreed to a three-person arbitration panel. The arbitrators heard extensive arguments concerning the Tribe's claim that the dispute before the panel was not arbitrable; the arbitrators also addressed discovery issues related to the arbitration. Now the Tribe is seeking to enjoin further arbitration proceedings, in which a hearing is currently scheduled, on the basis that arbitration at this time is premature. Essentially, the Tribe contends that before the provisions of the FSA may be enforced, the Tribe must be granted final federal recognition, the FSA must be approved by the Indian Gaming Commission, and a casino must be established. Spirit has filed a motion to dismiss the Tribe's application for injunctive relief.
In its request for injunctive relief, the Tribe seeks to reverse the arbitration panel's ruling that the dispute is arbitrable and also reverse the panel's ruling denying the Tribe's motion to quash subpoenaed documents relating to the Tribe's relationship with Donald Trump or his associates. In its motion to dismiss, Spirit challenges the court's jurisdiction to address these issues.
"[T]he motion to dismiss is the proper vehicle for claiming any lack of jurisdiction in the trial court. . . ." (Citation omitted; internal quotation marks omitted.) Upson v. State, 190 Conn. 622, 624, n. 4,461 A.2d 991 (1983). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Figueroa v.CS Ball Bearing, 237 Conn. 1, 4, 675 A.2d 845 (1996).
The Connecticut Supreme Court in White v. Kampner, 229 Conn. 465,641 A.2d 1381 (1994), has set forth the procedure by which a superior court may review the issue of arbitrability. "We have held that there are two procedural routes by which a party may preserve the issue of the arbitrability of a particular dispute for judicial determination. First, a party may refuse to submit to arbitration at the outset and instead compel a judicial determination of the issue of arbitrability. . . . CT Page 11954 Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute. . . . in such cases a court, on a motion to vacate, may properly entertain a challenge to an award alleging disregard of the limits of the parties' agreement with respect to arbitration. . . ." (Citations omitted.) Id., 476.
Spirit concedes that the Tribe has not waived its objection to arbitration, but contends that the Tribe first must proceed to arbitrate their disputes. In the event it is displeased with the result, according to Spirit, then the Tribe could raise the arbitrability issue in a motion to vacate the award pursuant to General Statutes § 52-418.
Spirit's argument that a party is precluded from appealing to a court's equitable powers once arbitration has commenced is an issue specifically addressed by our Supreme Court in Naugatuck v. AFSCME, Council No. 4, Local 1303, 190 Conn. 323, 460 A.2d 1285 (1983). "Had the plaintiff wished to obtain, ab initio, a judicial determination of the issue of arbitrability, it could have sought the aid of the court to resolve that question before submitting the question to arbitration Having authorized the arbitrators to decide the issue of arbitrability, the plaintiff cannot now appeal to the court's equitable powers for injunctive relief before proceeding to arbitrate the issue on the merits. Once the debate had begun, it cannot be interrupted relative to a claimed error by a participating team. A decision relative to a protest must be sought at the close of the polemics." Id., 326-27. Accordingly, the motion to dismiss the Tribe's application for injunctive relief is granted.
The Tribe filed an amended complaint on May 16, 2000, adding claims challenging the arbitration agreement on the grounds that the FSA was not "complete, valid and binding," and alleging that Alden's assignment of the FSA to Spirit is invalid and Spirit is an objectionable assignee. In response, the defendants moved for summary judgment on June 27, 2000.
The court is without jurisdiction to entertain the summary judgment motion. The Tribe has submitted the issue of arbitrability to the arbitrators. "Because we favor arbitration as a means of setting private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient economical system of alternative dispute resolution." Garrity v. McCaskey, 223 Conn. 1, 4-5,612 A.2d 742 (1992); see also White v. Kampner, supra, 229 Conn. 472. The court does not have jurisdiction to undertake interlocutory review of an arbitration proceeding. The plaintiff has submitted the issue of arbitrability to the arbitrators and must await the rendition of an award on the merits by the arbitrators. The Tribe's challenges to arbitrability CT Page 11955 may be initiated after a final arbitration award is rendered, pursuant to Connecticut General Statutes § 52-418. The plaintiff's amended complaint[2] is dismissed.
___________________, J. ROBERT F. McWEENY