[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS OR STAY
Defendant Oxford Health Plans (CT), Inc. ("Oxford"), has moved to dismiss, or alternatively, to stay, the above-captioned action on the ground that the plaintiffs agreed to arbitrate the disputes raised therein.
The court finds the facts set forth below after having held an evidentiary hearing. The plaintiffs, physicians who perform medical services to enrollees of the defendant's health insurance plan, are all parties to contracts known as "provider agreements." By the terms of these agreements, the physicians agreed to treat Oxford's enrollees, and Oxford agreed to pay in accordance with stated rates and billing procedures. Though some of the plaintiffs are parties to such agreements in the form applicable to primary care physicians and some are parties to agreements in the form applicable to consultant physicians, both forms of the provider agreement contain the following provision at paragraph 11, which is titled "Arbitration:"
 11. Arbitration. No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration in Connecticut, pursuant to the rules of the American Arbitration Association with one arbitrator. All costs and expenses of the arbitration, including actual attorney's fees, shall be allocated among the parties to this Agreement according to the arbitrator's discretion. The arbitrator's award may be confirmed and entered as a final judgment in any court of competent jurisdiction and enforced accordingly. Proceeding to arbitration and obtaining an award thereunder shall be a condition precedent to the bringing or maintaining of any action in any court with respect to any dispute arising under this Agreement, except for the institution of a civil CT Page 15841 action to maintain the status quo during the pendency of any arbitration proceeding. Notwithstanding the foregoing, the provisions of the Agreement shall not limit any cause of action or contract rights a Member otherwise has.
All of the named plaintiffs signed provider agreements containing this arbitration provision.
The defendant asserts that the claims made by the plaintiffs in this case are subject to the written agreement to arbitrate. The plaintiffs object that the issues raised in their complaint are not "dispute[s] arising under" their agreements with Oxford and are therefore not subject to the duty to arbitrate rather as a condition precedent to litigating. They further assert that they should be relieved of any obligation to arbitrate if they cannot present class claims in the arbitration.
Standard of review
Connecticut General Statutes § 52-408 provides that a written agreement to arbitrate "shall be valid, irrevocable and enforceable." The extent and scope of the obligation to arbitrate is defined by the language of the parties' agreement to arbitrate. "Arbitration is a creature of contract. It is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed." Success Centers, Inc. v. Huntington LearningCenters, Inc., 223 Conn. 761, 772 (1992). A party can be compelled to arbitrate a dispute "only if, to the extent that, and in the manner in which, he has agreed to do so." White v. Kampner, 229 Conn. 465, 471
(1994).
Where the contractual provision defining the scope of the disputes that the parties have agreed to arbitrate is not entirely clear, the rule of construction to be applied to the words of the contract is the "positive assurance test." United Steelworkers of America v. Warrior GulfNavigation Co., 363 U.S. 574, 582-83 (1960); White v. Kampner, supra,229 Conn. 473. Under this test, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." White v. Kampner, supra, 229 Conn. 473, quoting Board of Education v. Frey, 174 Conn. 578, 582 (1978); see alsoJohn A. Errichetti Associates v. Boutin, 183 Conn. 481 (1981); Green v.Connecticut Disposal Service, Inc., 62 Conn. App. 83, 87-88 n. 4, cert. denied, 256 Conn. 912 (2001). CT Page 15842
The Dispute at Issue
In their amended complaint, the plaintiffs allege that Oxford denies and/or delays reimbursement for medically necessary health care services to them and other physicians who have contracted to provide medical care to Oxford enrollees. They further allege that Oxford codes services in ways that result in lower compensation than is warranted, denies payment for multiple services performed in the same visit, fails to apply upward adjustments for complicated cases that require additional expenditure of time by physicians, makes determinations concerning medical necessity that are not in accordance with applicable medical and legal standards, and fails to provide adequate staffing to process required approvals.
The plaintiffs assert that some of Oxford's alleged breaches of its obligations to them as providers of services to Oxford enrollees constitute unfair trade practices in violation of the Connecticut Unfair Trade Practice Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq.
The plaintiffs allege that they seek to represent a class of physicians who have contracted with Oxford and who have experienced the same alleged conduct.
The plaintiffs also allege that Oxford used its superior bargaining position to obtain their agreement to its provider agreements. (Amended Class Action Complaint, para. 49(i).) They have not, however, claimed rescission among their claims for relief.
CUTPA Claim
The plaintiffs assert that because they have alleged that Oxford's performance of its obligations under the provider agreements constitutes a violation of CUTPA, this dispute is not subject to the arbitration provision that is part of the agreement that each plaintiff signed.
The issue whether a party is obligated to arbitrate a particular dispute depends on the wording of the arbitration clause: is the dispute at issue within the scope of the subject matter that a party agreed to arbitrate rather than litigate? Contrary to the plaintiffs' assumption, the courts have not decided that there are some statutory causes of action that are exempt from arbitration even if the parties have agreed to broad terms that include such statutory claims within the scope of the agreement to arbitrate. Legal issues as well as factual issues may come within the scope of an agreement to arbitrate. Garrity v. McCaskey,223 Conn. 1, 8 (1992). In Success Centers, Inc. v. Huntington LearningCenters, Inc., supra, 223 Conn. 773, the Connecticut Supreme Court noted that the plaintiff had not directed its attention to any authority that CT Page 15843 prohibits the arbitration of CUTPA claims, but stated that assertions that an arbitrator had improperly decided a CUTPA claim could be raised in a motion to vacate the arbitrator's award. A CUTPA claim was the subject of an arbitration in Saturn Construction Co. v. Premier Roofing Co.,238 Conn. 293 (1996), and the confirmation of the award by the Superior Court was upheld in the face of a challenge to the arbitrator's legal determinations, including an award of attorney's fees authorized by CUTPA.
As an alternative to their position that claims of CUTPA violations cannot in general be construed to be within the scope of their agreement to arbitrate disputes, the plaintiffs asserted at oral argument that the wording of the arbitration provision in the agreement they signed does not evince an agreement to arbitrate such a claim. The plaintiffs contend that the CUTPA claim is not a dispute "arising under" the provider agreements. In Fink v. Golenbock, 238 Conn. 183, 196 (1996), the court found the term "arising under" used in an arbitration clause to be "allembracing, all-encompassing and broad enough to include CUTPA claims."
The conduct that the plaintiffs dispute is Oxford's manner or performing or failing to perform its obligations under the provider agreements. The plaintiffs assert, in essence, that Oxford has so grossly perverted its performance that its conduct constitutes an unfair trade practice. These claims appear to this court, applying the "positive assurance" test identified above, to "arise under" the provider agreements, as they are directed to the manner of performance of obligations under that agreement.
Claimed Procedural Deficiencies of Arbitration
The plaintiffs urge this court to find that their CUTPA claim is exempt from their agreement to arbitrate disputes arising under the provider agreements because arbitration has some disadvantages as a forum for resolving CUTPA claims, notably, that it may not be possible to assert the claims of a class of providers. In agreeing to arbitrate disputes, parties relinquish both the advantages and disadvantages of civil procedure, notably, for example, the right to trial by jury. The plaintiffs refer this court to no authority that permits a party to abjure its prior contractual duty to arbitrate because it decides to raise a claim for which a civil action offers more favorable procedures. A court may not create exceptions not stated in parties' contracts. Levine v.Massey, 232 Conn. 272, 279 (1995); Fidelity Trust Co. v. BVD Associates,196 Conn. 270, 282 (1985); Hatcho Corp. v. Della Pietra, 195 Conn. 18, 21
(1985); Warner Associates v. Logun, 50 Conn. App. 90, 95 (1998). The parties contracted to have their disputes decided by the procedures CT Page 15844 applicable to arbitrations conducted under the auspices of the American Arbitration Association ("AAA") rather than those applicable in Connecticut's Superior Court. There is no basis for relieving the plaintiff of that agreement now that a dispute has arisen which the plaintiff would prefer to pursue in a different forum. The court expresses no opinion whether the AAA rules permit the consolidation of multiple claims or assertion of claims on behalf of a class.
Dismissal or stay?
The defendant has moved for dismissal of this action for failure to arbitrate, citing Kantrowitz v. Perlman, 156 Conn. 224 (1968). Alternatively, the defendant seeks a stay pursuant to Conn. Gen. Stat. § 52-409, which authorizes a court to stay an action that raises an issue subject to the duty to arbitrate.
"Where a contract contains a stipulation that the decision of arbitrators on certain questions shall be a condition precedent to the right of action on the contract itself, such a stipulation will be enforced and, until arbitration has been pursued or some sufficient reason given for not pursuing it, no action can be brought on the contract. Kantrowitz v. Perlman, [supra, 156 Conn. 227-28]."Multi-Service Contractors, Inc. v. Vernon, 181 Conn. 445, 447 (1980). By contrast, "the mere agreement to arbitrate standing alone does not give rise to a necessary implication that arbitration is a condition precedent to litigation. Indeed, if it did, there would never be any need to determine . . . whether any given agreement for arbitration implied that arbitration was a condition precedent to the bringing of an action. Nor would the provisions of § 52-409 of the General Statutes have any purpose. There must be some further provision in the agreement itself to show that arbitration is a condition precedent to litigation." (Citation omitted.) Kantrowitz v. Pearlman, supra, 156 Conn. 228-29.
In the present case, the arbitration clause expressly provides that arbitration is a condition precedent to litigation. By the terms of the provider agreements set forth above, the parties unequivocally agreed that completion of arbitration "shall be a condition precedent to the bringing or maintaining of any action in any court with respect to any dispute arising under this Agreement, except for the institution of a civil action to maintain the status quo during the pendency of any arbitration proceeding." This condition precedent has not been fulfilled in the present case. The Connecticut Supreme Court has ruled that a civil action initiated by a party without fulfilling the condition precedent should be dismissed. Multi-Service Contractors, Inc. v. Vernon, supra, 181 Conn. 447;Kantrowitz v. Perlman, 156 Conn. 227-28. CT Page 15845
It appears that a stay instead of dismissal is warranted in the situation, not presented here, in which some of the issues raised in the suit are not subject to the duty to arbitrate. A stay is also warranted in cases in which the parties have agreed to arbitrate disputes but have not agreed that arbitration shall be a condition precedent to instituting a suit. KND Corp. v. Hartcom, Inc., 5 Conn. App. 333 (1985).
Since arbitration is expressly identified as a condition precedent to all aspects of this suit, the action is dismissed.
Conclusion
The motion to dismiss is granted for the foregoing reasons.
 Beverly J. Hodgson Date Judge of the Superior Court