**Oddmund GRUNDSTAD,**
**Plaintiff–Appellant,**

v.

**Joseph RITT and American Arbitration**
**Association, Inc., Defendants–**
**Appellees.**

**No. 96–2428.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1996.

Decided Feb. 4, 1997.

202

Gary L. Starkman (argued), Kurt H. Feuer, Scott Hodes, Ross & Hardies, Chicago, IL, A. Rodger Traynor, Jr., Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, FL, for Oddmund Grundstad.

Adam J. Levitt (argued), Chicago, IL, David S. Carfello, American Arbitration Assoc., Chicago, IL, for Joseph Ritt.

Before ESCHBACH, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff-appellant Oddmund Grundstad ("Grundstad") appeals the district court's order denying Grundstad's motion to stay an arbitration proceeding initiated against him by defendant-appellee Joseph Ritt ("Ritt"), and entering summary judgment in favor of Ritt and the American Arbitration Association, Inc. ("AAA"). We reverse.

## I. Background

Prior to 1981, Grundstad (a citizen of Norway), Ritt (a citizen of Illinois) and Joel Rahn ("Rahn") were shareholders in a Cayman Islands corporation known as Atlantic Associates, Inc. ("Atlantic Associates"). Atlantic

Associates was engaged in the operation of gambling concessions on cruise ships. In 1981, Ritt was also the owner of another Cayman Islands corporation known as Atlantic International Vending and Gaming, Ltd. ("International Vending"), which was also engaged in the operation of gambling concessions on cruise ships. Ritt ended his association with Atlantic Associates in 1981, and on July 10, 1981, Atlantic Associates and International Vending entered into a contract (hereinafter the "Agreement"). The Agreement was entitled a "non-competition agreement," and the district court, after briefing by the parties, found that the purpose of the Agreement was "to facilitate Ritt's departure from Atlantic [Associates]." This finding is not disputed by the parties on appeal.

The district court, in its memorandum opinion, found that the parties entered into a "NonCompetition Agreement," which basically provided that, in exchange for International Vending's promise not to compete with Atlantic Associates in certain geographic areas, Atlantic Associates promised to pay a yearly sum to International Vending over a ten- to twelve-year period. The Agreement also contained the following arbitration clause:

> In the event that any dispute or controversy arises under this Agreement between the parties, then, and in such event, both parties agree to submit the matter to arbitration to be conducted in accordance with the rules of the American Arbitration Association, which arbitration shall be held in Springfield, Massachusetts.[1]

Atlantic Associates defaulted on its obligation to pay approximately $800,000 under the Agreement, and Ritt, as assignee of International Vending's rights under the Agreement, insisted on arbitration against Atlantic Associates under the above provision.[2] Pursuant to this arbitration, Ritt re-

---

1. The term "parties" is never specifically defined in the Agreement. The Agreement does state on the first page that it was "made this 10th day of July, 1981, *by and between ATLANTIC ASSOCIATES, LTD., ... AND ATLANTIC INTERNATIONAL VENDING AND GAMING, LTD.*" (emphasis added). The Agreement does not contain any other provision concerning the terms of arbi-

tration other than that contained within the above-quoted paragraph.

2. The record does not reveal when or under what circumstances Atlantic Associates did not pay the $800,000 owed to International Vending. However, counsel for Grundstad stated at oral argument that it was the "last" payment due under the Agreement which Atlantic Associates did not

ceived an arbitration award on February 22, 1993, of slightly over $842,000, which Atlantic Associates refused to pay. Shortly thereafter, Ritt converted this award to judgment in a Massachusetts state court. In spite of the entry of judgment, Atlantic Associates still refused repayment, and to date Atlantic Associates has not paid the judgment.

Ritt next proceeded against Grundstad and Rahn, who had guaranteed Atlantic Associates' performance under the Agreement. The guaranty by Rahn and Grundstad appeared on the final page of the Agreement (page five), immediately beneath the signatures of Ritt and Rahn as signatories to the Agreement on behalf of International Vending and Atlantic Associates, respectively. The guaranty read in sum: "We hereby guarantee all of the provisions of the within Agreement, and especially the performance of Atlantic hereunder. This 10th day of July, 1981."

Paragraph four of the Agreement made reference to this guaranty as follows:

[Atlantic Associates] agrees to obtain the signatures of two of the beneficiaries under a certain trust that holds the shares in [Atlantic Associates], Messers. H. Joel Rahn and Oddmund Grundstad to this Agreement guaranteeing all of the terms, covenants and provisions as well as the performance of [Atlantic Associates] hereunder.

The two sentences located immediately below the signatures of Ritt and Rahn on behalf of Atlantic Associates and International Vending, and bearing the signatures of Rahn and Grundstad personally, constituted the terms of the guaranty referred to in paragraph four of the Agreement.

Ritt sought to enforce the judgment he had received against Atlantic Associates against Grundstad and Rahn by initiating arbitration proceedings against them pursuant to the arbitration clause contained within the Agreement. Grundstad in response filed suit in the district court against Ritt (Rahn was not a party to Grundstad's suit), seeking

pay. Our examination of the Agreement reveals that the last payment due under the Agreement

to enjoin the arbitration. Grundstad argued that, since he was merely a guarantor of the Agreement and not a party to the Agreement, the arbitration clause in the Agreement did not oblige him to arbitrate issues arising from his guaranty. The district court, with the agreement of the parties, treated Grundstad's complaint and motion for a temporary restraining order as a motion for summary judgment. Thus, the issue before the district court on summary judgment was not whether Grundstad was liable as a guarantor of Atlantic Associates' performance under the Agreement, but whether Grundstad could be compelled to arbitrate his liability as a guarantor under the arbitration clause contained within the Agreement.

On April 26, 1996, the district court, after briefing by the parties, entered a memorandum opinion denying Grundstad's motion for summary judgment. The court, after reviewing the Agreement, concluded that: 1) because the guaranty was set forth on the same document as the Agreement; 2) because the guaranty and the Agreement made reference to each other; and 3) because the Agreement and the guaranty were executed on the same day, the Agreement and the guaranty were "inextricably tied," and "part of the same agreement." Specifically, the district court determined that the "general principles of contract law as well as the interplay between the parties' Agreement and the guaranty favor the applicability of the arbitration provision as to Grundstad." Thus, the court concluded that Grundstad, as guarantor of the agreement between Atlantic Associates and International Vending, was bound to arbitrate the issue of his liability as a guarantor on account of the arbitration clause contained within the Agreement. On May 17, 1996, the district court entered a minute order granting summary judgment to Ritt and AAA. This appeal ensued.

## II. Discussion

 The issue on appeal is whether the district court erred in granting summary judgment in favor of Ritt on the ground that,

was an $800,000 payment due July 1, 1992.

as guarantor of the Agreement, Grundstad was bound by the arbitration provision of the Agreement; specifically the language providing that "any dispute or controversy aris[ing] under this Agreement between the parties" would be arbitrated. The district court's determination on matters of arbitrability is essentially a matter of contract interpretation, and is subject to de novo review. *See Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 817 (11th Cir.1993); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 474 (9th Cir.1991).

■ The foundational principles governing the interpretation of arbitration agreements were laid down by the Supreme Court over thirty years ago: " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to arbitrate.' " *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). "[A]s a general rule, a guarantor who is not a signatory to a contract containing an arbitration clause is not bound by the arbitration clause[.]" *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 595 (6th Cir.1995). *See also* Gabriel M. Wilner, ed., 1 Domke on Commercial Arbitration § 10.07, at 133 (Supp.1996) ("Guarantors and sureties for the performance of a contract are bound by the arbitration clause in that contract *only when they expressly agree to the obligation to arbitrate.*" (emphasis added)).[3]

■ In *Morrie & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402 (7th Cir.1990), this court was faced with an issue similar to the case at bar. Like this case, in which Grundstad was the guarantor of a contract between Atlantic Associates and Ritt's company, Thrifty was the guarantor of a contract between the Mages and another company-Michigan Sporting Goods Distributors. The underlying contract between the Mages and Michigan Sporting Goods in that case contained an arbitration provision, but the guaranty itself did not. The Mages sought to declare Michigan Sporting Goods in default by asserting that Michigan Sporting Goods had breached the terms of the contract between the Mages and Michigan Sporting Goods. The Mages then sought to proceed against Thrifty as guarantor of Michigan Sporting Goods' performance under the contract, and Thrifty sought to compel arbitration on the basis, *inter alia*, of the argument that it was party to the arbitration agreement. Rejecting Thrifty's argument on this point, this court stated:

> "Thrifty's alternative claim that it is entitled to a stay [pending arbitration] because it is a party to the arbitration agreement is belied by the record. The Guaranty does not contain an arbitration clause and does not incorporate the arbitration provision of the Agreement between the Mages and [the company of which Thrifty was parent]." 916 F.2d at 406 n. 1.[4]

---

3. *Accord Interocean Shipping Co. v. National Shipping & Trading Corp.*, 523 F.2d 527, 538 (2d Cir.1975) ("A mere guarantor of a charter party generally cannot be compelled to arbitrate on the basis of an arbitration clause in the main agreement since it is not a party to that contract.").

4. As a factual matter, a nonsignatory guarantor of an agreement containing an arbitration provision may be bound by the arbitration provision when the particular guaranty *explicitly* incorporates the underlying agreement by reference. *See, e.g., United States Fidelity & Guar. Co. v. West Point Constr. Co.*, 837 F.2d 1507 (11th Cir. 1988); *Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274 (6th Cir.1984). *See generally* Domke § 7.01, at 81 ("[I]ncorporation by reference into a contract of an arbitration clause set forth in another agreement is deemed valid in any number of circumstances, even when the parties to

the two contractual instruments are not the same.").

A recent example of this occurred in *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328 (7th Cir.1995). In that case, as part of a franchise agreement, the Bormets entered into two contracts with Gingiss—one on behalf of themselves individually, and one on behalf of a corporation they owned. This court concluded that the Bormets were bound personally by the arbitration clause contained within the contract between Gingiss and their corporation because the contract the Bormets signed with Gingiss individually *"expressly* incorporated the arbitration clause [found in the contract between Gingiss and the Bormets' corporation]." 58 F.3d at 331 (emphasis added).

Relying on the phrase found within the guaranty that Grundstad "guarantee[s] *all* of the provisions of the within Agreement" (emphasis in

■ We agree with the district court that *Morrie Mages* is "distinguishable from the scenario presented here," primarily because of the fact that, in *Morrie Mages*, the guaranty and underlying agreement were on separate and distinct documents, while in the present case, the guaranty appears immediately beneath the signature line of the Agreement. The district court did not cite any case authority in concluding that this was a dispositive distinction, however, nor has either party cited any authority to support the conclusion that Grundstad's guaranty was a part of the underlying Agreement simply by virtue of the placement of this two-sentence guaranty beneath the signature line of the Agreement.

■ Ritt argues that Grundstad, when signing the guaranty, and based on the statement within the guaranty that Grundstad was agreeing to guarantee "all of the provisions of the within Agreement, and especially the performance of Atlantic hereunder," "bound himself" to the arbitration clause contained within the Agreement. We disagree, and conclude that the Agreement before us, including the particular language referred to, standing alone, does not *unambiguously* express Grundstad's intent to be *personally* bound by the arbitration clause within the Agreement. Nowhere within the document does the guaranty even refer to any undertaking by the guarantors to be bound personally to arbitrate disputes arising from the guaranty. The guaranty simply states that Grundstad and Rahn "hereby guarantee" the Agreement. It does not state that they agree to be bound personally by the Agreement.[5]

■ Summary judgment is appropriate in a matter of contract interpretation where no issues of fact exist because the language of the contract is unambiguous. *See Bechtold v. Physicians Health Plan,* 19 F.3d 322, 324–25 (7th Cir.1994). Thus, by granting summary judgment in favor of Ritt, the district court determined that, based on the express and unambiguous language of the Agreement and the guaranty, Grundstad had agreed to be bound personally to the arbitration provision contained within the Agreement. However, in the absence of language within the guaranty specifically stating that Grundstad would be bound by the arbitration clause contained within the Agreement, we are not convinced that, as a matter of law, he agreed to be so bound. Summary judgment for Ritt was inappropriate.

## III. Conclusion

The district court erred in determining that Grundstad, as a matter of law, agreed by virtue of his guaranty of the Agreement between Atlantic Associates and International Vending, to arbitrate Ritt's claim against him based upon the arbitration provision contained within the Agreement. The order of the district court is REVERSED and this case is REMANDED for proceedings consistent with this opinion.

district court's order), the district court concluded that the guaranty "specifically incorporates" the arbitration provision into the guaranty. However, while the above-quoted language in the guaranty does *refer* to the Agreement, we do not agree with the conclusion that the language necessarily demonstrates that incorporation of the Agreement into the guaranty was intended, since it never specifically refers to "incorporation" at all. *See* Domke § 10.07, at 133 ("It has been established that mere reference to the main contract will not be sufficient to establish consent to the arbitration provision.").

5. Ritt makes passing reference to the policy embodied in the Federal Arbitration Act, 9 U.S.C. §§ 1–14, that where a contract contains an arbitration clause, "doubts should be resolved in favor of coverage." Br. of Appellee at 7 (quoting

*AT & T Technologies, supra,* 475 U.S. at 650, 106 S.Ct. at 1419). However, this reference misconstrues the breadth of what has been called the "federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). As the First Circuit aptly observed in *McCarthy v. Azure,* 22 F.3d 351 (1st Cir.1994), the federal policy favoring arbitration applies to issues concerning the *scope* of an arbitration agreement entered into consensually by contracting parties; it does not serve to extend the reach of an arbitration provision to parties who never agreed to arbitrate in the first place. "Thus, requiring that arbitration rest on a consensual foundation is wholly consistent with federal policy." 22 F.3d at 355.