[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MAY 23, 1997 CT Page 4792
The plaintiffs have moved for injunctive relief concerning pending arbitration. The facts relative to this matter will be discussed in the decision. Preliminarily it should be said that this case arises out of the following factual scenario: The Scintos bought land and were building a home on that land; at a certain point after fairly substantial construction had occurred they decided to abandon their project and sell the property which they did to the Sosins; the contract dated November 15, 1990, provided the Sosins would take the property "as is" except for defects not reasonably discoverable; on the same day that this real estate contract was signed by Mr. and Mrs. Scinto as individuals, the Sosins entered into a construction contract with R.D. Scinto, Inc. for completion of the construction of the main house and maid's house on the property; the Scintos as individuals guaranteed the performance of the construction contract by R.D. Scinto which contained a so-called broad arbitration clause. Disputes developed as to the work performed both prior to and after November 15, 1990. The defendants filed for arbitration and the plaintiffs have sought injunctive relief claiming Mr. and Mrs. Scinto should not have to submit to arbitration and that the arbitration as to R.D. Scinto, Inc. should be restricted to work performed after November 15, 1990.
(1.)
The November 15, 1990 contract between R.D. Scinto, Inc. and the Sosins contains an arbitration clause, § 4.5.1 in the "general conditions of the contract for construction" which follows specific contract conditions set out in nine (9) so called "Articles." Article 9 at 9.1.7.1 contains a guarantee which states that for valuable consideration Barbara and Robert Scinto "jointly and severally, personally and expressly guarantee the performance of all of the terms and provisions of this agreement by the contractor without condition or exception." This guarantee follows a heading which at § 9.1.7 says:
 Other documents, if any, forming part of the contract documents are as follows: (List here any additional documents which are intended to form part of the contract agreement . . .
Although a line is provided for Barbara Scinto's signature, she did not sign this guarantee, only Robert Scinto did. However, a CT Page 4793 separate page appears which states that Barbara Scinto does "hereby guarantee the performance by R.D. Scinto, Inc . . . of the construction contract dated November 15, 1990" which as noted contains the arbitration clause. Mrs. Scinto signed this guarantee.
The first issue raised by the individual plaintiffs is that as guarantors they are not bound by the arbitration clause. The guarantees themselves contain no arbitration clause. It has been said that as a general rule a guarantor who is not signatory to a contract containing an arbitration clause is not bound by such a clause, Asplundh Tree Expert v. Bates, 71 F.3d 592, 595 (CA 6, 1995). Also: "Guarantors and sureties for the performance of a contract are bound by the arbitration clause in that contract only when they expressly agree to the obligation to arbitrate," Gabriel M. Wilner, ed, 1 Donke on Commercial Arbitration § 10.07 at 133 (Supp. 1996), Grundstadt v. R.H., 106 F.3d 201, 204
(CA 7, 1997), cf In re Application of Calvin Klein Company etal., 449 N.Y.S.2d 729, 713 (N.Y., 1982).
The defendants attempt to distinguish Grundstadt on two grounds. First, it is argued that the arbitration clause inGrundstadt is narrower — it is limited to "any dispute or controversy arising under this agreement"; the arbitration clause here includes claims "relating to the agreement." But, at least to the court, that argument is circular and misses the point. Because the agreement itself may contain a so-called broad arbitration clause that says nothing about whether particular parties are bound to that agreement. In other words, there is a strong federal and state policy favoring arbitration, Moses H.Cone Mem'l Hospital v. Mercury Construction Corp., White v.Kampner, 229 Conn. 465, 472-73 (1994), but as Grundstadt says in a footnote:
 ". . . the federal policy favoring arbitration applies to issues concerning the scope of an arbitration agreement entered into consensually by contracting parties; it does not serve to extend the reach of an arbitration provision to parties who never agreed to arbitration in the first place," 106 F.3d at page 205, footnote 5, citing McCarthy v. Azure, 22 F.3d 351, 355 (CA, 1994).
The second basis on which the defendants seek to distinguishGrundstadt is the fact, according to the defendants, that there CT Page 4794 "the guarantors were not signatories to the primary contract . . . in this matter the guarantors are signatories to the primary contract because Article 9.1.7 specifically incorporated the guarantees as contract documents . . ." page 7 of May 13, 1997 brief. The defendants rely on Asplundh TreeExpert Co. v. Bates, 71 F.3d 592 (CA 6, 1995). The Asplundh court notes that the guarantors in that case who were seeking to avoid arbitration were signatories to the underlying contract. Here Robert Scinto signed the contract agreement but Barbara Scinto did not. Mrs. Scinto signed a separate guarantee attached to the contract which is not referenced as a "contract document."
But Asplundh has other language which raises serious questions as to the defendant's position even as to Robert Scinto. That court did not rely solely on the fact that the guarantor was a signatory to the agreement. After all there as here the guarantee contained no reference to arbitration. Also Article 9.1.7 states "Other documents, if any, forming part of the contract documents are as follows" then such "documents" are to be listed. But the guarantee is not a separate document, the guarantee is merely typed in and titled "Guarantee" and listed under the general language of Article 9.1.7. The first page of the agreement defines it as an agreement between the Sosins and "the contractor," R.D. Scinto, Inc. Mr. Scinto signed the signature page for the entire agreement but that signature appears on the same page as the guarantee and directly below the typed-in guarantee. Under these circumstances, it is difficult to conclude that the guarantee as such is unambiguously part of the underlying agreement.
But in any event, in certain respects this case is very different from Asplundh. The court there did not simply rely on its reference to the fact that the guarantor in that case could be described as a signatory to the underlying agreement. InAsplundh a man named Bates was the party to the underlying agreement and in rejecting the guarantor Asplundh's claim that it was a "mere guarantor" the court noted: "we conclude that it was a party to the second agreement. The agreement provides Asplundh shall have the right to make additions to, or impose limitations upon Bates' responsibilities and privileges" id. at pp. 594-95. But here the guarantee clause and other contract language did not purport to give Mr. Scinto any responsibilities or powers to affect contract obligations and responsibilities between the Sosins and R.D. Scinto, Inc., cf Maxum Foundations, Inc. v. SalusCorp., 779 F.2d 974, 978 et seq (CA 4, 1985). Like the guaranty CT Page 4795 in Grundstadt, the guaranty here simply states that the guarantor guarantees the agreement, it does not state the guarantor is bound personally by the agreement, Grundstadt, 106 F.3d at page 205. Here the guaranty only guarantees "the performance" of all the terms of the underlying agreement by the contractor, R.D. Scinto, Inc. In the contract language explicit contractual obligations are imposed solely on the "Contractor" — R.D. Scinto. Inc. Thus the actual language of the guarantee conflicts with any interpretation of the contract that would allow Mr. Scinto to be characterized as a signatory to the underlying contract itself and thus bound personally to all its terms. This is a boiler plate "standard form of agreement between owner and contractor" — it provides, for example, that copies are to be given only to the "owner," the contractor — here R.D. Scinto, Inc. and the "architect."
Furthermore, as noted, Mrs. Scinto did not sign the last page of the agreement but signed a guarantee on a separate page. The language of this guarantee in effect is the same as that set forth in § 9.1.7.1 which appears above the agreements signature block. In a May 1, 1992 addendum to the November 15, 1990 contract it states on the first page that Mrs. Scinto for valuable consideration paid by the contractor "is released by owner as contractor's guarantor of the obligations and terms of the agreement." If the language of the guarantee Mrs. Scinto signed makes her a signatory to the underlying primary construction contract, it is somewhat peculiar that the May 1, 1992 addendum only released Mrs. Scinto "as Contractor's Guarantor" and made no reference to her status as a signatory to the contract. Also, if Mr. Scinto, individually, was a signatory to the primary contract and was understood by the parties to be such, why as to the May 1st addendum which contained many added contract terms and modifications, did he only sign it in his capacity as president of R.D. Scinto, Inc.? The foregoing discussion leads the court to conclude that Mr. and Mrs. Scinto cannot be found to have agreed to arbitration.
Also there is a separate reason for the court to find that Mrs. Scinto should not be compelled to arbitrate any claims that may be made against her by the Sosins. As just indicated pursuant to a May 1, 1992 understanding Mrs. Scinto was released by the Sosins as a guarantor of the obligations and terms of the agreement entered into between them and the contractor.
The defendants argue that the "prospective" liability of CT Page 4796 Barbara Scinto as guarantor of R.D. Scinto, Inc. terminated on May 1, 1992 but her past liability as guarantor for the period of time between November 15, 1990 and May 1, 1992 was not released or affected. Not only did her obligations as guarantor remain constant throughout that period but her "agreement" to submit any controversy arising out of the contract to arbitration remains operative. The Sosins cite as well-settled law Associated CatalogMerchandisers, Inc. v. Chagnon, 210 Conn. 734 (1989) where the court says "an offer for continuing guaranty is ordinarily effective until revoked by the guarantor or extinguished by some rule of law," id page 742.
But assuming Mrs. Scinto had an agreement to arbitrate, more to the point, are cases which hold that where the agreement for arbitration of disputes arising out of transactions under the agreement isn't tied to the agreements continuing viability, disputes which occur after the agreements termination but arising from such transactions, can be subject to arbitration, e.g.Realco Enterprises, Inc. v. Merrill Lynch, Pierce, Fenner Smith, Inc., 738 F. Sup. 515, 517 (S.D.Ga. 1990); Old RochesterRegional v. Rochester, 500 N.E.2d 1315, 1318 (Mass, 1986).
The problem for the defendants' position, however, is that the analysis presented in Realco Enterprises and Old Rochester
are not even reached because of the broad language used in the release. Arbitration is not expressly tied to the continued viability of the agreement but this does not mean that for valuable consideration a party cannot agree to relieve another contracting party from any obligations that could be said to arise or even have arisen under the terms of the agreement. This is not a case where a prior agreement merely expired or otherwise was revoked after the facts supporting a dispute occurred but before a demand for arbitration was made. Here Barbara Scinto for valuable consideration was released as guarantor of the obligations of the underlying agreement. Vis-a-vis Barbara Scinto then there appears to be no cognizable "dispute" to litigate either in arbitration or before the court.
In light of the foregoing analysis Mr. and Mrs. Scinto are entitled to the injunctive relief they request. There is a strong state policy favoring arbitration but "a person can be compelled to arbitrate a dispute only if, to the extent that, and the manner in which he (sic) has agreed to do so," Mansala v. ValueCorp. of America, 157 Conn. 362, 365 (1969). Arbitration agreements then are simply creatures of contract and should not CT Page 4797 be extended by implication, School Authority v. Bogan Bink,396 A.2d 433 (Pa., 1978). Since the court has interpreted the language of the agreement as not placing an obligation to arbitrate on Mr. Scinto or Mrs. Scinto it necessarily follows that they are entitled to injunctive relief against being compelled to enter into arbitration, cf Wesleyan University v.Rissil Construction Associates, Inc., 1 Conn. App. 351, 355
(1984), Eight Ball, Inc. v. Murray, 1995 Ct. Sup. 6610 (N.H.Sup. Ct). The harm they would suffer is irreparable — they would lose their right to a trial in the courts and they have no adequate remedy at law to achieve the relief requested. If you have not agreed to arbitration, and it appears clear that this is so, how else can you enforce your right except by an injunction preventing that arbitration?
(2.)
The next matter to be discussed is the question of the arbitrability of the disputes between R.D. Scinto, Inc. and the Sosins. Is R.D. Scinto, Inc. (the company) entitled to injunctive relief concerning the scope of arbitration under the agreement it signed with the Sosins? The company did enter into a construction contract with the Sosins whereby the company as contractor agreed to "execute the entire work described in the contract documents"; under Article 2 of the agreement it states "work of this contract includes the completion of a . . . residence . . . and a maid's house currently under construction" in Fairfield. This contract obligated the company to perform certain work specified in contract documents: the work to be done was contained in a detailed Project Manual.
Serious disputes developed between the parties and the Sosins filed for arbitration. The contract contains an arbitration clause wherein the company and the Sosins agreed to arbitrate "any controversy or claim arising out of or related to this contract or the breach thereof . . ." this is a broad arbitration clause due to its use of the "arising out of" and "related to" language, Hurlburt v. Genshar, 674 F. Sup. 385 (D Mass, 1987),Yale Materials Handling Corp. v. White Storage and RetrievalSystems, 573 A.2d 484 (N.J., 1990). Broad clauses give arbitrators the right to decide all contract related disputes, however labeled. Granger Northern, Inc. v. Cianchette, 572 A.2d 136 (Me, 1990). It has been held that the applicability of a broad arbitration clause is established by showing that resolution of the dispute between the parties depends on a review of some CT Page 4798 aspect of the underlying agreement, Tehran-Berkley CivilEnvironmental Engineers v. Tippets-Abbett-McCarthy Stratton,
816 F.2d 884 [CA, 1987]. The federal courts have developed a so-called "positive assurance" test which mandates that doubts in the interpretation of contract language should be resolved in favor of "coverage," that is arbitration. United Steelworkers ofAmerica v. Warrior Gulf Navigation Co., 363 U.S. 574, 582
(1960); our courts have adopted the test, Board of Education v.Frey, 174 Conn. 578, 582 (1978), White v. Kampner, 229 Conn. 465
472-73 (1994). The Courts have said if contract language falls within "the grey area of arbitrability" then arbitrability is mandated but White makes clear that if the contract language does not fall within that area the positive assurance test does not apply. Id page 473.
However it requires no recitation of authority to conclude that because parties have a contract for certain work which includes a broad arbitration clause that does not mean that any and all disputes between the parties, whether arising out of or related to the underlying agreement or not, are subject to arbitration or a determination of arbitrability by the arbitrator.
What does the applicable contractual language say on this issue? Some background is necessary. The Scintos began building this home for themselves and a substantial amount of work had been completed on the project. They could no longer complete the project and then tried to sell the property. On November 15, 1990 they entered into a contract of sale with Mr. and Mrs. Sosin. Paragraph 8 of the agreement stated that the "buyer agrees that he has examined the premises and is fully satisfied with the physical condition and value of the land, buildings and presently accepts them `as is' (except for any conditions not reasonably discoverable by the buyer and not disclosed in any building, water or radon test report . . ."
As previously noted, on the very same day the Sosins entered into a construction contract with R.D. Scinto, Inc. to do specified work which included the "completion" of the construction of the home and the maid's quarters. The project manual spelled out in detail the work that was to be done to accomplish this "completion" of the work of building the houses. The construction contract contained the broad arbitration clause previously referred to which provided for arbitration of all disputes arising out of or related to the R.D. Scinto, Inc. CT Page 4799 — Sosin contract. Mr. and Mrs. Scinto guaranteed the company's performance of all the terms and provisions of the construction contract.
What really appears to be involved here then is the objection by the company to having the arbitrators pass on the Sosin's claim for defective and/or nonconforming work performed prior to November 15, 1990.
The defendants refer to the Webster's definition of "completion" is the process of completing and completing means to bring to an end and especially into a perfected state. The argument then goes: "Construction work which was necessary to place the residence in a finished, perfected state was necessarily within the scope of work which was agreed to by the parties on November 15, 1990. Curiously, the construction contract does not exclude any completed or performed items or phases of construction work from the contractor's scope of work," pages 10-11 of 5/13/97 brief.
What perhaps is more to the point, however, is that the scope of work does not include inspecting, redoing, or modifying of the work that was completed on November 15, 1990. True in a philosophical sense it could be posited that nothing that is not perfected is completed but looking at the contract as a whole and the real world circumstances in which it was negotiated the word completed should be interpreted to mean what the parties must have thought it to mean when they put pen to paper in November 1990 — that is completion in the temporal sense, work was done before November 15, 1990, and it was the agreement that certain work was to be done after that date. That is what the company and the Sosins agreed to — that certain specified post November 15, 1990 work would be carried out by the company. That's the subject of their contract and it is only disputes regarding that work that should be subject to arbitration.
Any other interpretation of the contract language would indeed lead to a truly curious result. On the day the Scintos signed a contract for the sale of their property including the construction that already had taken place they included a clause that said the Sosins were buying it on "as is" basis. But on the same day. November 15, 1990, as guarantors they guaranteed the performance of a construction contract which if interpreted as the Sosins suggest would to a certain extent negate the limitations on liability sought to be effected by the "as is" CT Page 4800 clause in the real estate contract.
The Scintos had the right to sue R.D. Scinto, Inc. for defective work performed prior to November 15, 1990; the Sosins have to right to sue the Scintos individually for such work given the exception to the "as is" provision in the real estate contract, but the November 15, 1990 agreements interpreted individually or together cannot be said to transfer any claims the Scintos might have had to the Sosins.
The defendants argue that the court should "not construe plaintiff's exhibit (1) (real estate agreement) as a contract document with plaintiffs Exhibit (2)" (construction contract), (page 12 of 5/13/97 brief) and that the court should not consider the real estate contract for any purpose in deciding the appropriate scope of the company's obligation to arbitrate under the construction contract.
The parole evidence rule is apparently being referred to and that rule is based on the notion that:
 . . . when the parties deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme." Glendale Woolen Co. v. Protection Ins. Co., 21 Conn. 19, 37 (1851).
But reference to the real estate contract here is not resorted to for the purpose of varying or contradicting the terms of an integrated construction contract; it is not a collateral writing that is being considered as a means of varying the terms of the construction contract. Both documents should be read together for an understanding of the legal obligations the parties can be fairly said to have assumed on a specific date of contract formation. The parole evidence rule is not meant to be a straight jacket nor should it be used as a device to prevent enforcement of contractual intentions, TIE Communications, Inc.CT Page 4801v. Kopp, 218 Conn. 281, 289 (1991).
It is not so much that the language of the construction contract is ambiguous thus forcing an application of the so-called positive assurance test in determining arbitrability coverage. Nothing in that test indicates that a court in exercising its initial responsibility of interpreting a contract as to whether particular disputes were to be arbitrated must abandon traditional rules of contract interpretation or common sense in deciding whether an ambiguity can be fairly said to exist.
Based on the foregoing analysis, R.D. Scinto, Inc. is entitled to the injunctive relief they have requested. The court concludes there was no agreement to arbitrate any dispute as to work performed prior to November 15, 1990 by the company for a different owner.
I agree with the plaintiffs that signing of this order will enmesh the court in the details of arbitration, it merely sets the parameters for the arbitration panel and the arbitrators will make determinations whether particular claims arise from work not subject to the arbitration agreement — there is an easy cut off date, November 15, 1990, so this is not a case where arbitrability should be found because all the facts are so intertwined with a dispute that is admittedly arbitrable, MobilPetrochemical Sales Supply Co. v. M/T Brimanger, 711 F. Sup. 131,134 (SDNY, 1989).
Unless injunctive relief is granted there will be no adequate remedy at law, the plaintiff R.D. Scinto, Inc. will lose its right to have the dispute decided in a court of law and the damage will be irreparable since it will be forced to arbitrate a dispute it did not agree to arbitrate.
All requests for injunctive relief are granted and the court will sign the plaintiffs' proposed order.[1]
ORDER
Plaintiffs' Application for Temporary and Permanent Injunctive Relief, having come before this Court, the evidence having been heard, and the arguments of the parties having been duly considered, it is hereby ORDERED this 22nd day of May 1997.
 I. Defendants are temporarily and permanently enjoined from compelling R.D. Scinto, Inc. to arbitrate, and from arbitrating:
 A. Any and all construction work performed on the Project, as that term is defined in the Complaint, prior to November 15, 1990, only deletes this language because it concludes arbitrator has authority to make his/her own determination of that construction work completed before November 15, 1990.
 B. Any and all construction work on the Project not performed and/or constructed and/or managed by R.D. Scinto, Inc. thereafter.
 II. Defendants are temporarily and permanently enjoined from compelling Robert Scinto and Barbara Scinto from arbitrating any disputes arising out of or relating to the November 15, 1990 contract for the purchase and sale of the Project at 640 Sasco Hill Road or arising out of or relating to the November CT Page 4803 15, 1990 Construction Contract between defendants and R.D. Scinto, Inc.
CORRADINO, J.