**PRIME NORTHGATE PLAZA LIMITED PARTNERSHIP, a Delaware Limited Partnership, Plaintiff,**

**v.**

**LIFECARE ACQUISITIONS CORPORATION, a Florida Corporation and Lifecare Investments, Inc., a Florida Corporation, Defendants.**

No. 96 C 1718.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 25, 1997.

James Dennis Ossyra, Hopkihns & Sutter, P.C., Chicago, IL, for Plaintiff.

William H. Jones, Canel, Davis & King, Chicago, IL, for Defendants..

Daniel Keenan Ryan, Richard B. Polony, Hinshaw & Culbertson, Chicago, IL, Stephen Gerard Bohrer, Menard, Inc., Eau Claire, WI, for Third-Party Defendant.

### OPINION AND ORDER

NORGLE, District Judge.

Before the court is Plaintiff's Motion for Summary Judgment and Defendants' Cross–Motion for Summary Judgment. For the following reasons, Plaintiff's motion is granted in part and denied in part and Defendants' Cross–Motion for Summary Judgment is denied.[1]

## I. BACKGROUND

On December 15, 1992, Defendant Lifecare Acquisition Corporation ("Lifecare Acquisition") entered into a ten-year lease agreement with American National Bank and Trust Company of Chicago ("American National Bank"). As part of the lease, Defendant Lifecare Investments, Inc. ("Lifecare Investments") guaranteed "full, faithful and timely payment and performance" by Lifecare Acquisition Corporation (hereinafter Defendants collectively referred to as "Life-

care"). At some time after the lease and guarantee agreement were executed, American National Bank assigned all its rights and interest under the lease to Plaintiff Prime Northgate Plaza Limited Partnership ("PNP").[2]

During the first year of the lease, Lifecare's rental payments were based on a percentage of gross sales. For the remaining nine years, rental payments were calculated on the square footage occupied by Lifecare. In turn, PNP provided Lifecare with space in the Northgate Plaza to run a child daycare center. It was Lifecare's intent at the time it executed the lease to eventually assign the lease to one of its franchisees. However, by June 1995, no assignment of the December 15, 1992 lease had occurred and Lifecare failed to make any rental payments. Nevertheless, on July 24, 1995, PNP and Lifecare agreed to amend the lease.

The amendment essentially restructured Lifecare's monthly rental obligations. Although the dollar amount multiplied per square foot increased for all remaining lease years, Lifecare was permitted to pay its pre-July 1995 arrears, $53,287.48, in 21 monthly installments of $2,537.48. Lifecare's duty to make installment payments ran concurrently with its regular monthly rental obligations. Lifecare Acquisition, as lessee, and Lifecare Investments, as guarantor, executed the amendment. The sections of the lease not addressed in the amendment "remained in full force and effect."

On October 2, 1995, pursuant to section 16.4 of the lease agreement,[3] Lifecare assigned its "rights, liabilities, and duties" under the lease to its franchisee, Miyuki & Tyrone Corp. ("M & T"). The assignment and assumption agreement states that M & T "accepts the foregoing assignment and assumes the liability and duty to perform, fulfill and observe all the terms and conditions of

---

1. Defendants ask this court to strike the affidavit of C. Ronald Greenman. The court notes that Defendants' motion is not properly before the court. See Fed.R.Civ.P. 7, 12(f). However, construing Defendants' pleadings liberally, the court finds no basis to strike Mr. Greenman's testimony.

2. The parties' pleadings do not reflect the date PNP became successor-in-interest to the lease.

3. In relevant part, section 16.4 of the lease provides:

   [PNP] agrees that [Lifecare] may, at its option, upon written delivery of notice to [PNP] ... assign this Lease....

the Lease on the part of [Lifecare] to be performed." In accordance with the lease, Lifecare delivered notice and a copy of the assignment to PNP. At the time of assignment, Lifecare still had not made any payments pursuant to the lease amendment.

In December 1995, PNP received the first rental payment since the lease was first executed in December 1992. M & T delivered a check in the amount of $347.58, although more than $29,000.00 was owed at the time. For the following sixteen months, M & T submitted monthly checks substantially less than what was owed under the lease amendment. In fact, by March 1997, M & T had paid PNP a total of $39,262.57. However, more than $340,000.00 was still due. Thus, on February 29, 1996, PNP sent Lifecare notice of default. On March 25, 1996, PNP filed a two count complaint against Lifecare for breach of the lease and guarantee agreement.

On March 21, 1997, PNP moved for summary judgment. In its motion, PNP claims that Lifecare is contractually bound by the lease and guarantee agreement to pay monthly rental charges. Lifecare in its cross-motion for summary judgment, claims that it does not owe any sums of money because its duty to pay rent was extinguished when M & T became assignee. Furthermore, Lifecare claims that PNP breached the lease by failing to maintain Northgate Plaza in a manner compatible with a children's daycare center.

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Salima v. Scherwood South, Inc.,* 38 F.3d 929, 931 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett,* 477 U.S.

317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

When considering all the evidence presented in a motion for summary judgment, a court cannot make credibility determinations nor can it choose between competing possible inferences. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The court views the record, and resolves all reasonable inferences drawn from the record, in the light most favorable to the non-moving party. *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 346 (7th Cir.1997). Accordingly, if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted. *See O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1366 (7th Cir.1993).

Yet, the standard does nothing to alter the burden of proof "If the non-moving party bears the burden of proof on an issue, ... that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact." *Sample v. Aldi, Inc.,* 61 F.3d 544, 547 (7th Cir.1995). The non-moving party, therefore, will not survive summary judgment with merely a scintilla of evidence supporting its position. *Essex v. United Parcel Serv. Inc.,* 111 F.3d 1304, 1308 (7th Cir.1997). Instead, "the question is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* Finally, "summary judgment is appropriate in a matter of contract interpretation when no issues of fact exist because the language of the contract is unambiguous." *Grundstad v. Ritt,* 106 F.3d 201, 205 (7th Cir.1997).

The threshold issue in this case is one of contract interpretation: whether PNP is liable for rental payments under the lease and guarantee agreement after assigning the lease to its franchisee. Neither party disputes the existence of the documents or their mutual assent to be bound at the time of execution. Rather, Lifecare claims that the subsequent assignment of all liability to the franchisee extinguished its duty to pay any

rental fees. The court concludes that this argument lacks merit.

■■ Where contract terms are clear and unambiguous on their face, courts must give those terms their plain and ordinary meaning. *Emergency Med. Care, Inc. v. Marion Mem'l Hosp.*, 94 F.3d 1059, 1061 (7th Cir. 1996); *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 66 F.3d 862, 864 (7th Cir.1995) ("extrinsic evidence should not be used where the contract is unambiguous"); *Gross Common Carrier, Inc. v. Baxter Healthcare Corp.*, 51 F.3d 703, 709 (7th Cir. 1995) ("If pertinent provisions of a contract are unambiguous, a court need not examine extrinsic evidence to determine the contract's meaning."). Additionally, courts generally enforce contract clauses which continue to hold assignors liable on a contract even after a valid assignment. *See, e.g., Strauss v. Stratojac*, 810 F.2d 679, 684 (7th Cir.1987) ("an assignor of a contract remains liable on the contract after an assignment").

■■ Lifecare correctly notes that Section 16.4 of the lease grants the right to assign the lease to a franchisee without prior approval by PNP. However, as a condition of assignment, Lifecare may not "assign away" its ultimate liability. Section 16.4 expressly states that Lifecare, as lessee and guarantor, "shall continue to remain liable on this Lease for all terms, including but not limited to payment of Rental . . . ." Therefore, Lifecare is liable to PNP pursuant to the plain language of the lease and guarantee agreement. Were the court to adopt Lifecare's position, it would permit a lessee and guarantor to escape years of liability by simply executing an assignment agreement which the secured party did not approve. Fundamental principals of contract law do not support such a result. *Overseas Dev. Disc Corp. v. Sangamo Constr. Co., Inc.*, 686 F.2d 498, 504 (7th Cir.1982) (assignment not effective toward obligor unless accepted by obligor); *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 924 (2nd Cir.1977) ("No one can assign his liabilities under a contract without the consent of the party to whom he is liable."); *Gen. Elec. Railcar Leasing Serv. Corp. v. Carlson Mktg. Group Inc.*, 1992 WL 14175, at *3 (N.D.Ill. Jan.16, 1992) ("It is axiomatic that a party cannot by its own act, without the consent of the other party, relieve itself from its contractual liability.").

Nevertheless, Lifecare raises several grounds to avoid liability on the lease and guarantee agreement. First, Lifecare suggests that PNP's failure to object to the assignment and subsequent submission of inadequate rental payments, constitute a waiver of its right to complain. Notwithstanding the fact that Lifecare cites no relevant authority for its argument, PNP's failure to object is entirely consistent with the lease terms.

As discussed above, section 16.4 of the lease expressly states that Lifecare will remain liable as lessee and guarantor after an assignment. Thus, PNP knew that if the franchisee defaulted, it could look to Lifecare for payment. To protest an assignment in the face of clear contract language protecting PNP's interests would have been unnecessary. Additionally, with regard to PNP accepting rental checks in a lesser amount than what was actually owed, section 5.6 of the lease provides:

> The acceptance by [PNP] of a check for a lesser amount with an endorsement or statement thereon, or upon any letter accompanying such check, that such lesser amount is payment in full, shall be given no effect, and [PNP] may accept such check without prejudice to any other rights or remedies which [PNP] may have against [Lifecare].

Therefore, Lifecare's waiver arguments are without merit.

Second, Lifecare argues that its Cross–Motion for Summary Judgment should be granted because PNP failed to follow the proper default notification procedures outlined in "Exhibit A" to the lease. Exhibit A, entitled Assignment and Assumption Agreement, was included as part of the original lease agreement and intended for Lifecare's use when assigning the lease to a franchisee. However, Lifecare's reliance on Exhibit A is misplaced.

It is undisputed that Lifecare did not use Exhibit A when it assigned the lease to its franchisee. Rather, Lifecare and the fran-

chisee executed their own version of an assignment and assumption agreement.[4] Therefore, Lifecare will not be heard to complain that PNP failed to follow the default procedure established in Exhibit A when Lifecare itself disregarded that document by entering into its own assignment agreement.

Moreover, section 16.4 of the lease agreement governs the default procedure PNP was obligated to follow:

> In the event of any default under this Lease by the assignee of the original Tenant ... [l]andlord will not terminate this Lease or take any action to enforce any claim ... without giving Lifecare at least fifteen (15) days prior written notice and the right to cure such default within said fifteen (15) day period.

Section 16.4 continues and notes that Lifecare must cure the assignee's default before its rights as Tenant will be recognized.

Here, PNP sent a notice of default to Lifecare on February 29, 1996. The notice informed Lifecare that it had to cure the default or face possible legal action. When Lifecare failed to cure, PNP filed its complaint on March 25, 1996, more than 15 days after notice was dispatched. These uncontroverted facts demonstrate that PNP complied with the default notification procedures outlined in the section 16.4 of the lease. Therefore, Lifecare's argument lacks merit.

Third, Lifecare claims that PNP should be estopped from maintaining the instant action because Lifecare detrimentally relied upon PNP's August 2, 1996 representations, regarding a proposed reformation of the lease amendment. Specifically, Lifecare claims that during a telephone conversation, Alan Schroeder, an agent of Lifecare, admitted that the lease payment schedule was unfair and he would submit a proposal to reform the lease. Lifecare characterizes its argument as one based on the principal of promissory estoppel.

To invoke promissory estoppel, a party asserting the doctrine must show, among other elements, that an unambiguous promise was made and detrimental reliance occurred. *M.E. Fields v. Gen. Motors Corp.*, 121 F.3d 271, 276 (7th Cir.1997); *Kastel v. Winnetka Bd. of Education*, 975 F.Supp. 1072, 1083 (N.D.Ill.1997). Here, the affidavit testimony of Lifecare characterizes Mr. Schoeder's representations as a "proposal." A proposal is quite different than an unambiguous promise. By its very nature, a proposal is tenuous—subject to review, negotiation, or outright rejection. Unlike an unambiguous promise, there is nothing inherently trustworthy about a proposal which a party could reasonably rely upon. As such, the court will not construe a proposal as an unambiguous promise. Therefore, Lifecare cannot invoke the doctrine of promissory estoppel.

Finally, Lifecare claims that PNP breached the lease sometime after November 13, 1995, when it authorized another Northgate Plaza tenant, Menards, to expand into space previously designated as a common area. Tyrone Bitoy, president of M & T, states in his affidavit:

> [I]n the period since opening of the child care center on November 13, 1995 the character and traffic in the shopping center has become wholly industrial, hazardous to the children and family coming to the daycare center and incompatible with the child daycare center. These conditions have only worsened by the rabid expansion allowed by the Landlord [sic] of Menards from 82,000 square feet to more than 170,000 square feet up to and including hard against the children's daycare center and its playground for infants, children and toddlers.

As a result, Lifecare asserts that its franchisee cannot sustain a viable daycare business.

Section 10.2 of the lease governs the administration of common areas in Northgate Plaza. It empowers PNP with general au-

---

4. This was permissible because section 16.4 of the lease only requires that Lifecare assign the lease "pursuant to an Assignment and Assumption Agreement substantially in the form annexed hereto as Exhibit A...." Additionally, the court notes that the document used by Lifecare to assign the lease did not contain any provision regarding PNP's rights or duties upon default by the franchisee.

thority to regulate or close common areas, terminate easements, and "to do and perform such other acts in and to [common] areas and improvements as [PNP] shall determine to be advisable." However, all action taken by PNP regarding common areas "shall not . . . materially interfere with the conduct of Tenant's business in the Premises."[5]

■ PNP concedes that "[w]hether the area into which Menards has expanded is considered a 'common area' is debatable." However, PNP asserts in the alternative that even if Menards expanded into a common area, Lifecare's evidence does not rise to level of a material interference. PNP argues that Menards is merely an "annoying neighbor" who has placed "less than aesthetic racks of lumber" next to the daycare center. Based on the parties' contested allegations, the court concludes that a genuine issue of material fact exists as to whether Menards expanded into a common area and whether that expansion constituted a "material interference" with the daycare business. *See Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1104 (7th Cir.1997) (phrases in contract requiring interpretation create questions of fact). If both those questions are answered affirmatively, a question of fact also arises involving when the interference occurred. *Id.*

It is important to note, however, that these questions of fact do not effect the court's earlier determination that Lifecare is contractual bound to PNP as a lessee and guarantor. Accordingly, for purposes of this Opinion and Order, Lifecare is liable for all accrued debt under the lease and guarantee agreement up to the time a material interference may have occurred. Whether one oc-

curred, and, if so, the date of it, is for the fact-finder to determine.

## II. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted in part and denied in part and Defendants' Cross–Motion for Summary Judgment is denied.

IT IS SO ORDERED.

---

5. The court notes that Lifecare fails to cite any lease provision as the basis of its breach allegation. Further, Lifecare entitles its claim "Failure of Consideration; Breach of Site Plan." Although Lifecare has inartfully presented its claim, sufficient evidence exists to support the allegation as a breach of lease. Thus, the court treats it as such.

